MARILYN A. KETTELER, APPELLANT,
V. CARL J. DANIEL, APPELLEE.
556 N.W.2d 623

Filed December 13, 1996.    No. S-94-990.

Michael F. Coyle and Michael J. Mooney, of Fraser, Stryker, Vaughn, Meusey, Olson, Boyer & Bloch, P.C., for appellant.

David M. Woodke and Francie C. Riedmann, of Gross & Welch, P.C., for appellee.

WHITE, C.J., CAPORALE, FAHRNBRUCH, LANPHIER, WRIGHT, CONNOLLY, and GERRARD, JJ.

WHITE, C.J.

Appellant, Marilyn A. Ketteler, filed suit against appellee, Carl J. Daniel, for injuries sustained in a collision on April 26, 1991. Liability was admitted, and trial to a jury was limited to the question of damages. The jury returned a verdict in favor of Ketteler of $42,875.94. The amount was subsequently reduced to $35,541.41 when credit for advance payment was made.

Beginning in 1974, Ketteler noticed lumps in her breast, which she had removed by Dr. John Gatewood. The problem

reoccurred in 1977, at which time Dr. Gatewood removed the tissue from both of Ketteler's breasts for the purpose of decreasing her heightened risk of cancer. At that same time, Ketteler's breasts were reconstructed with silicone gel implants.

On April 26, 1991, Ketteler and Daniel were involved in an automobile accident at an intersection in Norfolk, Madison County, Nebraska. Daniel ran a stop sign, causing Ketteler to broadside Daniel's vehicle. During the initial impact, Ketteler's car spun, her shoulder restraint tightened, and her body slammed into the restraint. The initial collision caused Ketteler's car to spin counterclockwise, which caused the vehicles to collide a second time. As the vehicle spun, Ketteler's body continued to go forward, and as described by Ketteler, the "seat belt raked across, clear across, my chest."

Ketteler alleged that she suffered physical injuries as a result of the accident, including the rupture of her silicone breast implants. Although she did not seek immediate medical attention, she went to the Antelope Memorial Hospital emergency room to see her family physician, Dr. Dwaine Peetz, 3 days later. According to Dr. Peetz' records dated April 29, 1991, Ketteler's seatbelt had squeezed her right implant, the area of the right implant was tender, and she had bruising in her right knee.

Ketteler continued to see Dr. Peetz for several months after the accident because she had been suffering from neck pain and flulike symptoms. In December 1991, Ketteler went to Dr. Peetz' office, insisting that she be scheduled for a mammogram. Due to scheduling conflicts, Ketteler went to the University of Nebraska hospital in Omaha on January 22, 1992, to have a mammogram. The mammogram revealed that Ketteler's implants had ruptured, so Dr. Peetz advised her to see a plastic surgeon.

On January 30, 1992, Ketteler saw Dr. David Finkle. During the examination, Dr. Finkle observed that the implants were in a position higher than normal and that the left implant was soft, while the right implant was hard. At that time, Ketteler reported pain under her arm. Dr. Finkle also reviewed the mammogram results. These observances led Dr. Finkle to conclude that both implants had ruptured as a result of the automobile accident on

April 26, 1991, and had to be removed. The implants were removed on April 10, 1992.

Dr. Finkle testified concerning the examination and surgery. He testified that the implant and body capsule around the implant (capsule) were "totally disrupted and unorganized." Dr. Finkle also testified that while he observed tears in the implants, he did not observe tears in the capsules. Dr. Finkle observed that there was free-floating gel outside of the implant, but he did not discover any gel outside of the capsule. Finally, Dr. Finkle stated that he did not see any hemosiderin, which is a deposit present in tissues when there has been recent bleeding.

Dr. Edward Baccari, a plastic surgeon retained by Daniel, testified that Ketteler's implants failed due to time-related deterioration. His opinion was based in part on discovery documents, depositions of Dr. Finkle, letters, photographs, and medical records. Dr. Baccari's opinion as to causation was the subject of foundational objections and motions to strike by Ketteler.

Dr. William Palmer, a rheumatologist who also testified on behalf of Daniel, gave his opinion as to Ketteler's rheumatological status. On February 28, 1994, Dr. Palmer examined Ketteler. At that time, Ketteler complained that she had a lot of pain in her neck and back, that she was stiff, and that she was suffering from severe fatigue. Ketteler informed Dr. Palmer that the pain in her joints and throughout her body had interfered with her ability to do housework and participate in athletics. Ketteler also stated that prior to the accident she had suffered from neck, low-back, and other joint pain.

As part of Dr. Palmer's examination, he examined Ketteler's musculoskeletal system. More specifically, Dr. Palmer looked for trigger points, or areas of tenderness, at the base of Ketteler's skull, on her spine, at the top of and in between her shoulder blades, over her hips, at the inner aspects of her knees, and at the outer aspects of her elbows. He discovered approximately 12 trigger points. In addition to examining Ketteler, Dr. Palmer reviewed the medical records of a Lincoln physician, Dr. David Cooley, which were received into evidence.

Dr. Palmer testified that in his opinion Ketteler was suffering from fibromyalgia on the date of her examination. Fibromyalgia

is a soft-tissue pain syndrome which causes patients to experience generalized musculoskeletal pain in the neck, back, and joints. Dr. Palmer stated that Ketteler's fibromyalgia was not caused by the accident. To the contrary, it was Dr. Palmer's opinion that the condition existed long before the accident. He based his opinion on the fact that Dr. Cooley diagnosed Ketteler with fibrositis (i.e., fibromyalgia) in 1980 and that musculoskeletal complaints were recorded throughout the preaccident medical summaries prepared by Daniel's counsel.

Ketteler raised a foundational objection to Dr. Palmer's testimony because his testimony was contradictory to statements he had made in a medical report prior to trial. In the report, Dr. Palmer stated that he was unable to confirm Dr. Cooley's examination and, consequently, was unable to determine the date of the onset of Ketteler's condition.

At trial, Ketteler argued that there may be a link between autoimmune disease and silicone poisoning, and testified that she feared that she had acquired or may acquire in the future an autoimmune disease as a result of her implant ruptures.

Dr. John Hurley, a rheumatologist, testified on behalf of Ketteler. Dr. Hurley stated that he could not tell Ketteler with a reasonable degree of medical certainty that she would not get an autoimmune disease in the future. On cross-examination, Daniel attempted to impeach Dr. Hurley by questioning him about an article in The New England Journal of Medicine which concluded that there is no association between breast implants and connective-tissue diseases. On direct examination, Dr. Palmer also testified as to the conclusion reached by the article in the journal. Ketteler objected to Dr. Palmer's testimony on the basis of foundation.

At the conclusion of the trial, an instruction conference was held. Ketteler objected to jury instruction No. 6, which stated that "[t]here is evidence that the plaintiff had a neck, back and hip condition prior to the accident of April 26, 1991. The defendant is liable only for any damage that you find to be proximately caused by the accident of April 26, 1991." Ketteler argued that the instruction only partially stated the law and that her proffered instruction more aptly reflected Nebraska law. More specifically, the proffered instruction recognized

Ketteler's preexisting problems, as well as instructed the jury that Daniel may be liable for harm to Ketteler even though the injury was greater than usual due to the physical condition which predisposed Ketteler to the injury.

On August 18, 1994, the jury returned a verdict in favor of Ketteler in the amount of $42,875.94. Daniel filed a motion to modify judgment and motion for further proceedings to determine setoff. Daniel contended that he was entitled to a setoff and modification of judgment because the sum of $7,334.53 had been paid for the property damage prior to trial. On September 15, the court sustained Daniel's motion, and the verdict was reduced to $35,541.41. Ketteler's motion for new trial was also overruled at that time. Ketteler's notice of appeal was filed on October 14.

Ketteler assigns five errors which can be summarized as follows: The trial court erred (1) in allowing the opinion of Dr. Baccari regarding the cause of Ketteler's breast implant ruptures to be considered by the jury over Ketteler's foundational objections and motions to strike, (2) in failing to discredit and disregard Dr. Palmer's testimony as a matter of law, (3) in allowing Dr. Palmer to read a medical treatise to the jury as independent evidence of the opinions contained therein, and (4) in submitting to the jury its instruction regarding Ketteler's preexisting conditions rather than submitting Ketteler's proffered instruction.

Where the Nebraska Evidence Rules apply, the rules, as opposed to judicial discretion, govern whether evidence will be admitted unless the rules make judicial discretion a factor in determining admissibility. The trial court's ruling in receiving an expert's testimony will be reversed where there has been an abuse of discretion. *Floyd v. Worobec*, 248 Neb. 605, 537 N.W.2d 512 (1995). The trial court's ruling in receiving evidence will be reversed where there has been an abuse of discretion. *Hoeft v. Five Points Bank*, 248 Neb. 772, 539 N.W.2d 637 (1995).

To establish error based on the trial court's refusal to give a requested instruction, an appellant must show that (1) the given instruction was prejudicial or otherwise adversely affected a substantial right of the appellant, (2) the proffered instruction is

a correct statement of the law, and (3) the proffered instruction is warranted by the evidence. *Klawitter v. Lampert*, 248 Neb. 231, 533 N.W.2d 896 (1995). A jury verdict will not be disturbed on appeal unless it is so clearly against the weight and reasonableness of evidence and so disproportionate as to indicate that it was the result of passion, prejudice, mistake, or some means not apparent in the record, or that the jury disregarded evidence or rules of law. *McDonald v. Miller*, 246 Neb. 144, 518 N.W.2d 80 (1994). An appellate court shall reach conclusions on questions of law independent of the trial court's conclusions on questions of law. *Lincoln Lumber Co. v. Fowler*, 248 Neb. 221, 533 N.W.2d 898 (1995).

Ketteler first contends that the trial court erred in receiving into evidence the testimony of Daniel's expert witness, Dr. Baccari. Pursuant to Neb. Rev. Stat. § 27-702 (Reissue 1995), "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." The trial court initially determines whether expert testimony will assist the trier of fact. *Coppi v. West Am. Ins. Co.*, 247 Neb. 1, 524 N.W.2d 804 (1994). The soundness of such a decision depends upon the qualifications of the witness, the nature of the issue on which the opinion is sought, the foundation laid, and the particular facts of the case. Furthermore, expert opinion should not be admitted if the expert does not possess sufficient facts to enable him to express a reasonably accurate conclusion. *Kroeger v. Ford Motor Co.*, 247 Neb. 323, 527 N.W.2d 178 (1995).

At trial, the following facts were testified to and were submitted to the jury for their consideration: (1) Ketteler underwent a bilateral mastectomy and reconstructive surgery on March 17, 1977; (2) Ketteler testified that she did not remember hitting the steering wheel during the collision; (3) Dr. Peetz' records, which were dated April 29, 1991, indicated that Ketteler's seatbelt had squeezed her right implant, the area of the right implant was tender, and her right knee was bruised; (4) none of the Antelope Memorial Hospital emergency room records indicate that Ketteler's chest was bruised; (5) Ketteler underwent a

mammogram on January 22, 1992; (6) Dr. Peetz, after reviewing the mammogram, reported findings consistent with focal rupture of the right implant and elongation of the left implant consistent with rupture; (7) Dr. Finkle, while examining Ketteler, observed that her right implant was very firm, her left implant was soft, and both implants were in a more superior position than usual; (8) Dr. Finkle testified that when he operated on Ketteler, "it looked like a grenade had gone off in her chest. The implants were totally disrupted"; and (9) during the operation, Dr. Finkle did not observe a tear in the capsule, free-floating silicone outside of the capsule, or hemosiderin.

While Drs. Finkle and Baccari do not disagree with the preceding facts, they do disagree as to what conclusion or opinion should be drawn from such facts. In Dr. Finkle's opinion, the mammogram report, Ketteler's prior history, her physical examination, and his observations made during surgery indicated that Ketteler's implants had ruptured and had ruptured as a result of the automobile accident on April 26, 1991. In Dr. Baccari's opinion, the length of time Ketteler had had implants, the inability of Ketteler to establish whether she hit the steering wheel during the accident, the absence of complaints about chest pains in Dr. Peetz' records, the tearing of the implant but not the capsule, the absence of free-floating gel outside the capsule, and the absence of hemosiderin indicated that Ketteler's implants had not ruptured as a result of the accident, but had deteriorated.

It appears from the record that Dr. Baccari did not disregard facts but, to the contrary, accepted the facts presented to the jury and simply disregarded Dr. Finkle's opinion as to causation. The trial court correctly submitted both opinions to the jury because it is the job of the fact finder, and not the court, to determine the weight and credibility of evidence. *Beauford v. Father Flanagan's Boys' Home*, 241 Neb. 16, 486 N.W.2d 854 (1992).

Ketteler's second contention is that the trial court erred in failing to discredit Dr. Palmer's changed testimony.

This court has held that when a party, acting as a witness, changes his testimony without offering a reasonable explanation, the altered testimony is discredited and disregarded as a

matter of law. *State v. Osborn*, 241 Neb. 424, 490 N.W.2d 160 (1992). In *Osborn*, we did not extend the rule to nonparty witnesses, nor will we extend the rule today. An inconsistent statement by a nonparty witness is a factor to be considered by the jury when determining the weight and credibility to be given the witness' testimony. It is evident that Dr. Palmer is not a party in this case. The assigned error is not meritorious.

Ketteler assigns as her third error that the trial court improperly allowed Ketteler's expert witness, Dr. Palmer, to testify as to statements contained in The New England Journal of Medicine. This error had not been properly preserved for this court's review.

Learned writings regarding specialized areas of knowledge are clearly hearsay. *Stang-Starr v. Byington*, 248 Neb. 103, 532 N.W.2d 26 (1995). Moreover, Nebraska Evidence Rules do not contain an exception to this hearsay rule. See Neb. Rev. Stat. §§ 27-801, 27-803, and 27-804 (Reissue 1995).

It appears from the record that Daniel had Dr. Palmer testify about a conclusion reached in an article in The New England Journal of Medicine to establish the absence of a link between autoimmune disease and silicone poisoning. Since the journal was used as independent evidence, the only proper objection in this case was hearsay and not foundation. Ketteler, however, failed to raise such an objection at trial. As previously held by this court, "where the grounds specified for the objection at trial are different from the grounds advanced on appeal, nothing has been preserved for this court to review." *Behm v. Northwestern Bell Tel. Co.*, 241 Neb. 838, 845, 491 N.W.2d 334, 340 (1992).

Ketteler assigns as her last error the trial court's submission of instruction No. 6 to the jury. We hold that the trial court erred in refusing to submit Ketteler's proffered instruction.

Instruction No. 6, which was submitted to the jury, states: "There is evidence that the plaintiff had a neck, back and hip condition prior to the accident of April 26, 1991. The defendant is liable only for any damage that you find to be proximately caused by the accident of April 26, 1991." The instruction proposed by appellant provides:

> There is evidence that Marilyn Ketteler had a pre-existing neck and back condition prior to the date of this colli-

sion. The Defendant is liable only for any damages that you find to be proximately caused by the collision of April 26, 1991.

If you cannot separate damages caused by the pre-existing condition from those caused by the accident, then the Defendant is liable for all of those damages.

The Defendant may be liable for bodily harm to Marilyn Ketteler even though the injury is greater than usual due to the physical condition which predisposed Marilyn Ketteler to the injury. In short, the Defendant takes the Plaintiff as he finds her.

A trial judge has a duty to correctly instruct jurors on the law. *Omaha Mining Co. v. First Nat. Bank*, 226 Neb. 743, 415 N.W.2d 111 (1987). Instruction conferences provide a trial court the opportunity to correct mistakes apparent in the jury instructions. While proposed instructions submitted by either party assist the court in assessing the soundness of its instructions, submission of proposed instructions does not relieve a party from indicating to the court at that time whether any omission has been made in the instructions. *Haumont v. Alexander*, 190 Neb. 637, 211 N.W.2d 119 (1973). Most importantly, failure to object to instructions during the conference prohibits counsel from objecting at a later time. *Omaha Mining Co., supra.*

Ketteler argues that instruction No. 6 failed to provide a complete list of her preexisting conditions. More specifically, Ketteler alleges that the list should have included her breast implants. Curiously, breast implants were not included as a preexisting condition in Ketteler's proffered instruction. Moreover, during the instruction conference, counsel for Ketteler objected to instruction No. 6 and submitted the proposed instruction, but never argued that either the court's instruction or the proposed instruction failed to include breast implants. For these reasons, Ketteler was not entitled to an instruction which classified breast implants as a preexisting condition.

Ketteler also argues that the court erred when it eliminated paragraphs 2 and 3 of her proffered jury instruction from the instruction submitted to the jury. We reverse the lower court's decision regarding this matter.

We recently addressed this issue in *David v. DeLeon*, 250 Neb. 109, 547 N.W.2d 726 (1996). See, also, *Kirchner v. Wilson, ante* p. 56, 554 N.W.2d 782 (1996) (relying on *David* to establish that defendant is liable for all damages resulting from his negligent acts, including damages resulting from aggravation of preexisting condition). *David* involved an automobile accident between plaintiff and defendant at the intersection of 29th Street and St. Mary's Avenue in Omaha. The trial court directed a verdict on the issue of liability in favor of plaintiff and submitted the issue of damages to the jury. The jury then returned a verdict for plaintiff.

Prior to the accident, plaintiff suffered from arthritis in his back and knees. Defendant proposed a jury instruction which stated:

> "There is evidence that the plaintiff had degenerative disc disease of the cervical spine (also called spondylosis), spinal stenosis of the lumbar spine, and degenerative arthritic changes in the knees prior to the date of the accident. The defendant is liable only for any damages that you find to be proximately caused by the accident."

*David*, 250 Neb. at 113, 547 N.W.2d at 729.

The trial court rejected defendant's instruction and instead submitted plaintiff's proposed instruction, which represented the entire instruction as set out in NJI2d Civ. 4.09:

> "There is evidence that the plaintiff had pre-existing back and joint conditions prior to the date of the accident. The defendant is liable only for any damages found to be proximately caused by the accident.
>
> "If you cannot separate damages caused by the pre-existing conditions from those caused by the accident, then the defendant is liable for all of those damages."

*Id.* at 113, 547 N.W.2d at 729.

On appeal, defendant argued that she was prejudiced by the lower court's refusal to submit her proffered instruction. We affirmed.

In reaching our decision in *David*, we relied on *McCall v. Weeks*, 183 Neb. 743, 164 N.W.2d 206 (1969). In *McCall*, we adopted the "eggshell-skull" theory. We also held that a person injured as a result of another person's negligent acts is entitled

to recover all damages which proximately resulted from those acts, including damages resulting from aggravation of a preexisting condition. The ruling in *McCall* justified the trial court's decision to issue its instruction in *David*.

Consistent with our previous decisions in *David* and *McCall*, we hold that Ketteler's entire proffered instruction should have been submitted. First, the proffered instruction correctly stated the law. Second, the instruction was warranted by the evidence offered by Dr. Palmer, who testified that Ketteler suffered from fibromyalgia prior to the accident, and by Dr. Peetz, who testified by deposition that Ketteler had suffered from back and neck conditions prior to the accident which were aggravated by the accident. Finally, refusal by the trial court to submit the entire proposed instruction was prejudicial to Ketteler.

REVERSED AND REMANDED FOR A NEW TRIAL
ON THE ISSUE OF DAMAGES.