CHARLES WASIAK, APPELLEE, V. OMAHA PUBLIC POWER DISTRICT
AND GARY L. BORNHOFT, APPELLANTS.
RONA WASIAK, APPELLEE, V. OMAHA PUBLIC POWER DISTRICT
AND GARY L. BORNHOFT, APPELLANTS.

568 N.W.2d 229

Filed August 29, 1997.   Nos. S-95-751, S-95-752.

Joseph E. Jones and Mark C. Laughlin, of Fraser, Stryker, Vaughn, Meusey, Olson, Boyer & Bloch, P.C., for appellants.

Stephen L. Gerdes for appellees.

WHITE, C.J., CAPORALE, WRIGHT, CONNOLLY, GERRARD, STEPHAN, and McCORMACK, JJ.

GERRARD, J.

Charles Wasiak and Rona Wasiak filed separate lawsuits against Omaha Public Power District (OPPD) and its employee, Gary L. Bornhoft, in regard to injuries sustained by Charles Wasiak in a traffic accident allegedly caused by Bornhoft. These suits, brought under the Political Subdivisions Tort Claims Act, were consolidated, and on the eve of trial, OPPD and Bornhoft admitted liability. Accordingly, the bench trial concerned only issues regarding causation and damages. In its judgment, the trial court generally found in favor of the Wasiaks and awarded Charles Wasiak $47,467.12 in special damages and an additional $135,000 in general damages. Rona Wasiak was awarded $35,000 for her loss of consortium. OPPD and

Bornhoft appeal, asserting several errors. Finding OPPD and Bornhoft's assigned errors to be without merit, we affirm the judgment.

## FACTUAL BACKGROUND

On September 14, 1991, Charles Wasiak was stopped in traffic when Bornhoft, driving an OPPD double dump truck pulling a trailer and trencher, struck the rear end of the car stopped behind Wasiak's car, which, in turn, struck the rear end of Wasiak's car. Bornhoft stepped out of his truck and approached the cars with which his truck had collided in order to see if the drivers were injured. Bornhoft testified that when he approached Wasiak's car, he tried to make contact with Wasiak by tapping on the window. However, Wasiak did not respond except to look at Bornhoft and then look away. Later, an emergency medical technician who lived in a nearby apartment building tried to make contact with Wasiak by tapping on his window. Wasiak testified that seeing this woman tapping on his window was his first memory after the accident.

Wasiak was taken to Bergan Mercy Hospital where he remained for 6 days. The medical evidence at trial revealed the following:

The initial emergency room records indicated that Wasiak was diagnosed with acute cervical strain, possible herniated lumbar disk, and a concussion. The orthopedic surgeon who treated Wasiak in the hospital, Dr. Louis Tribulato, reported that Wasiak presented himself at the emergency room suffering severe incapacitating pain in his neck and back with marked muscle spasms and with pain into his shoulders, hips, and left posterior chest. Dr. Tribulato's impression was that Wasiak had cervical and lumbar strain superimposed on previous cervical and lumbar pathology.

The previous cervical and lumbar pathology described by Dr. Tribulato occurred in December 1989, when Wasiak was involved in another rear-end collision. Wasiak sustained injuries to his neck, back, and shoulder in this accident. Immediately prior to the September 1991 accident, Wasiak was still experiencing some pain and discomfort in his neck, back, and shoulder as a result of the 1989 accident. However, Wasiak had returned to his employment full time and had been released

from the care of his treating orthopedic surgeon, Dr. James O'Hara, and had been told to return only if needed. Dr. O'Hara testified that following an August 22, 1991, visit, he thought that Wasiak was able to function with his discomfort and pain. Dr. O'Hara suggested that Wasiak take his nonsteroidal anti-inflammatory medication only during periods of increased activity and suggested that he consider a swim therapy program.

While in the hospital subsequent to the 1991 accident, Wasiak was again treated by Dr. O'Hara. Dr. O'Hara found Wasiak to have a considerable spasm and pain in his neck and back, and a cervical strain/sprain superimposed on the previous injury. Dr. O'Hara continued to treat Wasiak upon release; however, all attempts to treat Wasiak's pain were basically ineffective. On November 6, 1991, Rona Wasiak telephoned Dr. O'Hara and told him that she was concerned about Wasiak's failing memory and depression. Dr. O'Hara advised her to make sure Wasiak stopped taking his narcotic analgesic prescription and suggested that he make an appointment to see Dr. Jan Golnick, the neurologist who treated Wasiak subsequent to his 1989 accident. At trial, Dr. O'Hara concluded that the 1991 accident aggravated Wasiak's preexisting condition, causing his current neck, back, and shoulder problems.

Dr. Golnick testified that after the 1989 accident, he could not recall Wasiak's ever complaining about mental or emotional problems. In fact, during this period, Dr. Golnick reported that Wasiak filled out a routine assessment summary called a Beck inventory. Dr. Golnick uses this assessment to screen all patients for depression. The results of the test administered to Wasiak demonstrated a raw score of 5, indicating no significant depression.

Dr. Golnick testified that when he saw Wasiak subsequent to the second accident, on November 18, 1991, Wasiak was a completely different person than before due to depression, a personality change, and impaired memory function. Among the symptoms Dr. Golnick identified as caused by the 1991 accident were daily headaches, constant sharp to stabbing neck pain, pain in the back of the head, nausea associated with headaches, photophobia, tinnitus in both ears, decreased hearing in the left ear, and memory and cognitive impairment.

Dr. Golnick testified that during the 3 years prior to trial, he had coordinated the treatment of Wasiak's injuries in regard to the 1991 accident. During this period, Wasiak had been treated with a variety of antidepressants, nonsteroidal anti-inflammatory agents, narcotic analgesics, caudal block treatments, bilateral greater occipital nerve block injections, bilateral cervical paraspinal injections, and left stellate ganglion blocks. All treatments provided only temporary relief. Dr. Golnick also reported that physical therapy was equally ineffective in providing Wasiak relief for his pain.

It was Dr. Golnick's opinion that as a result of the 1991 accident, Wasiak sustained a mild posttraumatic brain injury. Dr. Golnick described the mechanics of this injury as occurring when a sudden acceleration or deceleration causes diffuse injury to the brain, not when an individual sustains a blow to the head.

Dr. Golnick referred Wasiak to a psychiatrist, Dr. William Egan, for treatment of his depression. Dr. Egan reported that Wasiak had some mild memory problems in addition to depression. Dr. Egan's initial impression was that Wasiak was suffering from postconcussion syndrome in regard to the 1991 accident and depression related to a loss of cognitive functioning. Dr. Egan treated Wasiak with antidepressant medication and counseling. Dr. Egan concluded that the symptoms Wasiak presented were consistent with a traumatic brain injury and that the 1991 accident caused his depression. Dr. Egan also opined that Wasiak was suffering real pain, that the source of the pain was physical and not psychological, and that Wasiak was not malingering.

Dr. Golnick also referred Wasiak to Dr. Jerry Sweet, a clinical neuropsychologist, located in Evanston, Illinois. Based on his examination of Wasiak, Dr. Sweet concluded that Wasiak presented no striking neuropsychological deficits, but Dr. Sweet did present several findings consistent with subtle to mild neuropsychological impairment associated with head injury. These findings included impairment to complex nonverbal problem solving, incidental memory, initial learning, and recall of complex narrative information, as well as personality change and significant depression. Dr. Sweet also concluded that Wasiak was not malingering and had no prior depression or preexisting

personality problems. Dr. Sweet opined that Wasiak had suffered a traumatic brain injury in the 1991 accident.

Dr. Jay Parsow, a physical medicine and rehabilitation specialist, evaluated Wasiak in June 1992. Dr. Parsow concluded that Wasiak was suffering from cervical disk disease and lumbar disk disease with radiculopathy as a result of the 1991 accident. Both conditions were aggravations of his preexisting neck and back injuries sustained in the 1989 accident. Dr. Parsow also opined that Wasiak was truthful in reporting his complaints; that he was not malingering or exaggerating his symptoms; that the pain he experienced was real; that Wasiak continued to report constant neck, back, shoulder, and hip pain; and that his current symptomology was caused by the 1991 accident.

Dr. Parsow referred Wasiak to Dr. Britt Thedinger, a neurootologist, for diagnosis and treatment of his tinnitus, dizziness, and loss of hearing. Dr. Thedinger testified that examination of Wasiak indicated an impairment in regard to Wasiak's left inner ear and a condition called latency of saccades. Dr. Thedinger said that this condition indicates some sort of injury within the central nervous system. It was Dr. Thedinger's opinion that Wasiak's dizziness was caused by a closed head injury occasioned in the 1991 accident, that Wasiak was being truthful in reporting his symptoms, and that a violent shaking of his head in the 1991 accident caused his inner ear problem and tinnitus.

OPPD and Bornhoft presented expert testimony from a psychiatrist, Dr. Bruce Gutnick, and a psychologist, Dr. Thomas Haley. Dr. Gutnick opined that Wasiak did not suffer a brain injury and testified that Wasiak's symptoms were the result of dysthymia, undifferentiated somatoform disorder, and a personality disorder not otherwise specified. Dysthymia is a chronic underlying depression. Undifferentiated somatoform disorder was described as a condition in which either an individual presents physical symptoms for which there is no physical cause or the physical symptoms presented are widely disproportionate to what would be expected given a known physical cause. Although Dr. Gutnick had testified in a deposition taken approximately 1 week before trial that Wasiak's undifferentiated somatoform disorder was caused by the 1991 accident, it was his opinion at the time of trial that neither the undifferenti-

ated somatoform disorder nor the dysthymia was caused by either accident. Instead, Dr. Gutnick thought that Wasiak was unconsciously making up his brain injury symptoms to benefit from the secondary gains of not working and the gratification one might sense when being cared for by one's family. Finally, Dr. Gutnick opined that Wasiak's pain was real and that he was not malingering.

Dr. Haley testified that Wasiak did not suffer a brain injury, but, instead, was suffering from somatization disorder not otherwise specified which began sometime after the 1989 accident. Dr. Haley agreed that Wasiak's pain was real and that he was not malingering.

Two of the Wasiaks' experts disagreed with OPPD and Bornhoft's experts in regard to their diagnoses and opinions on causation. Dr. Egan testified that a diagnosis of undifferentiated somatoform disorder was incorrect because Wasiak was presenting symptoms consistent with his injuries. Further, Dr. Egan opined that Wasiak did not exhibit dysthymic disorder because his depression was secondary to his accident. However, Dr. Egan agreed that Wasiak was somaticizing his injury to an extent in that he was focusing a great deal of attention and energy on his perceived physical problems and having difficulty coping with whatever physical problems were present.

Dr. Sweet likewise disagreed with a diagnosis of undifferentiated somatoform disorder. Dr. Sweet thought that it was a mistake to use those terms when by historical record there has been a brain injury. In addition, Dr. Sweet disagreed with the diagnosis of dysthymic disorder because the objective evidence indicates that Wasiak exhibited no depression before the 1991 accident, as evidenced by Dr. Golnick's administration of the Beck inventory test, but, yet, that when Dr. Sweet administered this same test after the 1991 accident, Wasiak's raw score was 27, indicating moderate to severe depression. However, Dr. Sweet did agree that Wasiak was somaticizing to a degree, in that he was focusing a significant amount of his attention on perceived physical problems.

In its judgment for the Wasiaks, the trial court made two specific findings, which are the focus of OPPD's and Bornhoft's appeals. The trial court found that (1) the accident did not cause

a traumatic brain injury to Wasiak and (2) Wasiak does suffer from somatization resulting from the accident.

## ASSIGNMENTS OF ERROR

OPPD and Bornhoft claim that the trial court erred in (1) finding that Wasiak's somatization was caused by the accident, (2) awarding general damages to Wasiak and damages for loss of consortium to Rona Wasiak based on a finding that Wasiak's somatization was caused by the accident, and (3) awarding medical expenses in regard to treatment Wasiak received for his alleged brain injury. Finally, OPPD and Bornhoft assert that the trial court erred, as a matter of law, in overruling (1) its motion to set aside or vacate the judgment and (2) its motion for a new trial.

## STANDARD OF REVIEW

In actions brought pursuant to the Political Subdivisions Tort Claims Act, the findings of the trial court will not be disturbed on appeal unless they are clearly wrong, and when determining the sufficiency of the evidence to sustain the verdict, it must be considered in the light most favorable to the successful party. Every controverted fact must be resolved in favor of such party, and it is entitled to the benefit of every inference that can reasonably be deduced from the evidence. *Scholl v. County of Boone*, 250 Neb. 283, 549 N.W.2d 144 (1996); *Nelson v. Metropolitan Utilities Dist.*, 249 Neb. 956, 547 N.W.2d 133 (1996).

## ANALYSIS

OPPD and Bornhoft first claim that Wasiak has failed to present any expert evidence regarding causation because the trial court found that Wasiak did not suffer a brain injury as asserted by the Wasiaks' experts, but, instead, found that his condition was caused by somatization as asserted by OPPD and Bornhoft's experts. As such, OPPD asserts that the trial court's judgment in favor of Wasiak is clearly wrong.

The premise of OPPD and Bornhoft's argument is not supported by the record. First, contrary to OPPD and Bornhoft's assertion, the trial court did not find that Wasiak's condition was caused by undifferentiated somatoform disorder, as asserted by OPPD and Bornhoft's experts. Instead, consistent with the tes-

timony of the Wasiaks' experts, Drs. Egan and Sweet, the trial court found that Wasiak "does suffer from somatization *resulting from* the [1991] accident." (Emphasis supplied.) By choosing the words *"resulting from* the [1991] accident," the trial court rejected OPPD and Bornhoft's argument that Wasiak was suffering from a somatoform disorder that predated or was unrelated to the 1991 accident. Instead, the trial court determined that Wasiak's somatization was another manifestation of injury *resulting from* the 1991 accident, rather than a separate disorder that was caused by something that predated or was unrelated to the 1991 accident.

Further, notwithstanding the trial court's finding that the accident did not cause Wasiak to suffer a traumatic brain injury, the record is replete with evidence that Wasiak suffered other significant injuries caused by the accident which are sufficient to support the trial court's judgment and award. The Wasiaks' expert, Dr. Golnick, identified several current symptoms which, in his opinion, were caused by the 1991 accident. Those symptoms included daily headaches, constant sharp to stabbing neck pain, pain in the back of the head, nausea associated with headaches, photophobia, tinnitus in both ears, decreased hearing in the left ear, and memory and cognitive impairment. Drs. O'Hara and Parsow opined that Wasiak's current symptoms were caused by an aggravation of his preexisting cervical and lumbar injuries resulting from the 1991 accident. We have consistently held that the right of a person suffering from a preexisting condition who is injured by reason of the negligence of another to recover for all damages proximately resulting from the negligent act includes the right to recover for an aggravation of the preexisting condition. See, *Ketteler v. Daniel*, 251 Neb. 287, 556 N.W.2d 623 (1996); *Kirchner v. Wilson*, 251 Neb. 56, 554 N.W.2d 782 (1996); *David v. DeLeon*, 250 Neb. 109, 547 N.W.2d 726 (1996).

In addition, the Wasiaks' experts, Drs. Golnick, O'Hara, Parsow, and Egan, as well as OPPD and Bornhoft's experts, Drs. Gutnick and Haley, all agree that Wasiak was experiencing real pain resulting from the 1991 accident and was not malingering. Although Drs. Gutnick and Haley opined that Wasiak's undifferentiated somatoform disorder predates his 1991 acci-

dent, neither expert expressed an opinion that the pain that Wasiak was experiencing at the time of trial was not caused by the 1991 accident. Thus, this point is uncontested. Whether Wasiak's claimed undifferentiated somatoform disorder predates his 1991 accident is irrelevant if his current identifiable symptoms were, in fact, caused by the 1991 accident.

OPPD and Bornhoft also assert that expert testimony is required to establish the cause and extent of injuries which are subjective in nature, as opposed to establishing those of objective injuries where conclusions can be drawn from extrinsic proven facts without the aid of special technical knowledge or science. See, e.g., *Storjohn v. Fay*, 246 Neb. 454, 519 N.W.2d 521 (1994). From this, OPPD and Bornhoft argue that because Wasiak offered no expert testimony that his somatization was caused by the 1991 accident, he has failed as a matter of law to prove causation, and, thus, the trial court judgment is clearly wrong.

This argument completely ignores the fact that upon consideration of the evidence and the law, the trial court found generally for the Wasiaks and against OPPD and Bornhoft at the same time that the trial court made specific findings explaining its judgment. There is extensive medical evidence in this case which establishes the nature and extent of Wasiak's injuries. It was uncontested that some, if not all, of Wasiak's injuries were symptomatic of an aggravation of his preexisting cervical and lumbar condition.

Instead, the issues contested by the parties at trial were whether Wasiak's symptoms were permanent and occasioned by a closed head injury in addition to the cervical and lumbar injury, whether Wasiak was somaticizing to some degree his cervical and lumbar injury, or whether all of Wasiak's current symptoms were occasioned by undifferentiated somatoform disorder. The trial court unequivocally concluded that Wasiak suffered cervical and lumbar injury from the 1991 accident but that Wasiak was also somaticizing to some extent as a result of the accident. The judgment of the trial court is supported by substantial medical evidence.

Finally, OPPD and Bornhoft assert that the medical expenses incurred with respect to the treatment of Wasiak's alleged brain

injury were erroneously assessed against them. The record does not support OPPD and Bornhoft's conclusion that Wasiak was ever treated for a brain injury. Instead, the record reveals that Dr. Golnick appropriately referred Wasiak to several different medical specialists in order to provide effective treatment for the many symptoms which Wasiak was presenting as a direct result of the 1991 accident. Accordingly, there is no merit to OPPD and Bornhoft's claim.

## CONCLUSION

For the foregoing reasons, the record supports the findings of the trial court and the order that was entered. We, therefore, affirm the judgment.

AFFIRMED.