SHELDON COHEN ET AL., APPELLANTS, V.
PAPIO-MISSOURI RIVER NATURAL RESOURCES DISTRICT, APPELLEE.

602 N.W. 2d 49

Filed November 9, 1999.    No. A-98-046.

Sheldon J. Harris, Brent M. Kuhn, and Britany S. Shotkoski, of Harris, Feldman Law Offices, for appellants.

Paul F. Peters, of Taylor, Kluver, Peters & Drews, for appellee.

HANNON, SIEVERS, and CARLSON, Judges.

CARLSON, Judge.

## INTRODUCTION

Sheldon Cohen; Joyce R. Cohen; Kirk Meisinger, trustee; and Citizens State Bank, mortgageholder (hereinafter collectively

referred to as the "condemnees"), appeal a jury award of $205,050 entered by the district court for Sarpy County in their favor. The jury awarded the condemnees this amount for the taking of a tract of their land by the Papio-Missouri River Natural Resources District (NRD). For the reasons set forth below, we affirm.

## BACKGROUND

On March 14, 1995, NRD instituted proceedings in the county court for Sarpy County to acquire certain real estate by eminent domain. This acquisition included approximately 41 acres of a 63-acre tract of land owned by the condemnees and located in Sarpy County near the intersection of Highway 370 and Turkey Road.

After a hearing on August 24, 1995, a county board of appraisers awarded the condemnees $215,585 for the taking of their property, and on September 15, the condemnees filed an appeal to the Sarpy County District Court.

In an amended petition filed December 30, 1996, the condemnees stated that the amount of damages awarded by the board of appraisers was inadequate, incomplete, and below the fair market value of the property. The condemnees stated that they had not incurred any severance damages as a result of NRD's taking. The condemnees prayed for damages in the amount of $500,000 for the fair value of the land taken, together with interest as allowed by Neb. Rev. Stat. § 76-711 (Reissue 1996); attorney fees, expert witness fees, and costs expended, as allowed by Neb. Rev. Stat. § 76-720 (Reissue 1996); and such other and further relief as the court deemed just and equitable.

In NRD's answer filed January 6, 1997, it prayed that the condemnees' petition be dismissed.

A jury trial was held in Sarpy County District Court on November 10, 12, 13, and 14, 1997. Both the condemnees and NRD called expert witnesses to testify. The condemnees called Daniel Reeder and Patrick Morrissey to testify on their behalf. Reeder, a licensed real estate broker, testified that the determination of a property's best and highest use is important in valuing the property. Reeder testified that properties with the highest and best use of a residential acreage are valued the lowest

and that properties with the highest and best use of multifamily residential are valued the highest. Reeder testified that the condemnees' property is in a great location and that there is easy access in and out of the property. Reeder testified that the property currently lacks utilities, but that these are available.

Reeder testified that the condemned property's best and highest use at the time of the taking was multifamily residential development with some commercial development potential on the frontage of Highway 370. Reeder described the condemned property as rolling and testified that the property would require some grading if developed. Reeder testified that the fair market value of the condemned property was between $10,000 and $11,000 per acre on the date of the taking, March 14, 1995. Reeder testified that the property was ready to be developed as a residential subdivision on March 14.

Morrissey, a licensed appraiser and a member of the appraisal institute (MAI), testified that he valued the condemned property at $368,111. Morrissey testified that he did so after comparing the condemned property to five other properties which he reviewed and deemed to be the most comparable to the condemned property. Morrissey referred to these five properties as comparables. At trial, Morrissey testified in detail regarding the characteristics of each of these comparables. Morrissey testified that the condemned property's best and highest use at the time of the taking was residential subdivision use and that the condemned property would be ready for residential development in 3 to 5 years.

In contrast, NRD called Thomas Stevens, also a licensed appraiser and an MAI, to testify on its behalf. We set out Stevens' testimony in detail because Stevens' testimony is the main issue in this appeal. On direct examination, Stevens testified that the condemned property's best and highest use at the time of the taking was for acreage subdivision purposes and that as utilities were extended into the area, the property had some potential for residential subdivision use. Stevens testified that he based this opinion on the fact that the condemned property has electricity, but lacks water, natural gas, and a sewer. Stevens testified that it would take approximately 7 to 10 years for the condemned property to be ready for residential development and

that this development was dependent on Papillion's growth and the city's position on extending sewer and water to this area.

Stevens testified that he examined between 20 and 25 other properties which had recently been sold and were similar to the condemned property. Stevens testified that he had narrowed this list down to 13 properties—8 in Papillon, 4 in Gretna, and 1 near Springfield—which he thought were the most comparable. On direct examination, Stevens testified concerning the general characteristics of the Gretna properties without objection. Stevens testified generally that all of the Gretna properties were similar to the condemned property in that at the time they were sold, the properties were raw farmland, located on public roads, were similar in size, and had the potential for acreage or future residential development use.

After Stevens began to testify regarding the specifics of the first comparable Gretna property, the condemnees objected on the ground of lack of foundation and stated that the comparables in Gretna were incompetent, irrelevant, immaterial, and too remote. Initially, the district court sustained the condemnees' objection, stating that in general, the Gretna properties were not good comparables because Gretna is in excess of 10 to 12 miles from the site of the condemned property and because Gretna is not a growing community like Papillon is. Subsequently, the trial court reversed its ruling and allowed NRD to introduce evidence of the Gretna comparables.

Upon continuation of Stevens' testimony on direct, Stevens discontinued any discussion of the Gretna comparables and focused instead on five comparable properties located in the Papillion area. The condemnees made a continuing objection to the introduction of these sales as irrelevant or immaterial, which objection the trial court repeatedly overruled. Stevens testified in great detail concerning these five sales, noting their similarities to the condemned property and the selling price of each property. Stevens testified that based on the sale price of these five properties as well as the other eight properties he reviewed, the value of the condemned property at the time of the taking was $3,500 per acre.

On cross-examination, Stevens testified that in his appraisal report dated November 30, 1994, he had selected 4 properties

from his list of 13 properties as the properties most comparable to the condemned property. Stevens testified that in his report, these four properties were the most recent, as well as the most similar, to the condemned property in topography, size, and location. Stevens testified that three of the four properties he listed in his report as most comparable properties, properties 1 through 3, are located in Gretna while property 5 is located in Papillion. In contrast, Stevens acknowledged that at trial, he focused on five comparable properties, property 5 in Papillion in addition to four other Papillion properties, properties 6, 11, 12, and 13. Stevens testified that at trial, he focused on the Papillion properties instead of the Gretna properties because properties 5, 6, 11, 12, and 13 are those sales "most persuasive right in the Papillion area."

On redirect, Stevens testified regarding the selling price of three of the Gretna properties, properties 1, 2, and 3. Stevens did so over the condemnees' objection that such inquiry was beyond the scope of cross-examination.

On November 14, 1997, the jury returned a verdict in the condemnees' favor in the amount of $5,000 per acre or $205,050.

On November 21, 1997, the condemnees filed a motion for new trial, which was subsequently overruled by the district court. The condemnees appeal.

## ASSIGNMENTS OF ERROR

On appeal, the condemnees' six assignments of error can be summarized as follows: The condemnees argue that the trial court erred in (1) failing to instruct the jury that Stevens' testimony was discredited as a matter of law because the evidence adduced at trial demonstrated that Stevens, a party witness, materially changed his testimony on vital points in order to meet the exigencies of trial; (2) allowing Stevens to testify regarding the properties Stevens viewed as comparable to the condemned property; and (3) overruling their motion for a new trial.

## STANDARD OF REVIEW

A condemnation action is reviewed as an action at law, in connection with which a verdict will not be disturbed unless it

is clearly wrong. *Smith v. Papio-Missouri River NRD*, 254 Neb. 405, 576 N.W.2d 797 (1998).

In proceedings where the Nebraska Evidence Rules apply, the admissibility of evidence is controlled by said rules; judicial discretion is involved only when the rules make such discretion a factor in determining admissibility. *Id.*

A trial court's ruling in receiving or excluding an expert's opinion which is otherwise relevant will be reversed only when there has been an abuse of discretion. *Id.*

A judicial abuse of discretion exists when a judge, within the effective limits of authorized judicial power, elects to act or refrain from action, but the selected option results in a decision which is untenable and unfairly deprives a litigant of a substantial right or a just result in matters submitted for disposition through the judicial system. *Id.*

## ANALYSIS

*Exigencies of Trial.*

On appeal, the condemnees argue that the evidence adduced at trial demonstrates that Stevens, a party witness, materially changed his testimony on vital points in order to meet the exigencies of trial, and as such, his testimony should have been discredited as a matter of law. The condemnees also argue that Stevens' testimony at trial was misleading and contrary to the standards for professional appraisers. NRD contends that Stevens is not a party witness and that therefore, any inconsistencies in Stevens' testimony were a factor for the jury to consider.

In *Ketteler v. Daniel*, 251 Neb. 287, 556 N.W.2d 623 (1996), the Nebraska Supreme Court stated that when a party, acting as a witness, changes his or her testimony without offering a reasonable explanation, the altered testimony is discredited and disregarded as a matter of law.

In *Ketteler*, Marilyn Ketteler filed suit against Carl Daniel for injuries Ketteler allegedly sustained in a collision with Daniel on April 26, 1991. After the jury returned a verdict in favor of Ketteler, Ketteler appealed.

At trial, both Ketteler and Daniel called expert witnesses to testify on their behalf. One of the witnesses Daniel called at trial

was Dr. William Palmer, a rheumatologist, who testified that he examined Ketteler. Palmer testified that in his opinion, Ketteler was suffering from fibromyalgia on the date of her examination, a soft-tissue pain syndrome which causes patients to experience generalized musculoskeletal pain in the neck, back, and joints. Palmer testified that Ketteler's fibromyalgia was not caused by the accident, but, rather, that her condition existed long before the accident. At trial, Ketteler objected to Palmer's testimony because his testimony was contradictory to statements he had made in a medical report prior to trial.

■ On appeal, Ketteler claimed that the trial court erred in failing to discredit Palmer's changed testimony. The Supreme Court stated the general rule above regarding discrediting the changed testimony of a party acting as a witness. Additionally, the Supreme Court stated that this rule did not apply to a non-party expert witness. Specifically, the Supreme Court stated:

In [*State v. Osborn*, 241 Neb. 424, 490 N.W.2d 160 (1992),] we did not extend the rule to nonparty witnesses, nor will we extend the rule today. An inconsistent statement by a nonparty witness is a factor to be considered by the jury when determining the weight and credibility to be given the witness' testimony. It is evident that Dr. Palmer is not a party in this case. The assigned error is not meritorious.

*Ketteler*, 251 Neb. at 295, 556 N.W.2d at 628.

■ Similarly, in the instant case, as in *Ketteler*, it is evident that Stevens is a nonparty expert witness. Thus, any inconsistent statements made by Stevens were a factor to be considered by the jury when determining the weight and credibility of Stevens' testimony. We do not discuss the condemnees' argument that Stevens' testimony at trial was misleading and contrary to the standards for professional appraisers because the condemnees failed to object to Stevens' testimony on trial on these grounds. If a party fails to make a proper objection to evidence, the party is deemed to have waived the right to challenge the admissibility of evidence on appeal. *Coffey v. Mann*, 7 Neb. App. 805, 585 N.W.2d 518 (1998). Therefore, this assignment of error is without merit.

*Tactical Surprise.*

On appeal, the condemnees argue that they were unfairly prejudiced by NRD's tactical surprise in presenting evidence contrary to Stevens' appraisal report produced in discovery and relied upon by the condemnees in preparing their case. Essentially, the condemnees appear to argue that the trial court erred in allowing Stevens to testify because NRD violated its duty under the discovery rules regarding supplementation. NRD contends that the condemnees' assignment of error is without merit because the condemnees failed to make any of the following motions: a motion instructing the jury to disregard Stevens' testimony, a motion to strike Stevens' testimony, a motion for a continuance, or a motion for a mistrial.

The Nebraska Supreme Court has stated that the purpose of the discovery process is to provide an adequate pretrial preparation as a basis for an informed cross-examiner and informative cross-examination. *Norquay v. Union Pacific Railroad,* 225 Neb. 527, 407 N.W.2d 146 (1987). Further, the discovery process enables litigants to prepare for a trial without the element of an opponent's tactical surprise. *Id.*

Neb. Ct. R. of Discovery 26(e)(1)(B) (rev. 1996) provides that a party is under a duty to seasonably supplement his or her response with respect to any question directly addressed to "the identity of each person expected to be called as an expert witness at trial, the subject matter on which he or she is expected to testify, and the substance of his or her testimony."

Without commenting on whether or not NRD violated the discovery rules by failing to supplement Stevens' appraisal report, we note that regardless of that fact, when a party has not complied with the discovery rule governing interrogatories, Neb. Ct. R. of Discovery 26(b)(4)(A)(i) (rev. 1996), or the rule governing supplemental responses, rule 26(e)(1)(B), an adverse party must make an appropriate objection, move to strike certain testimony, request a continuance, or move for a mistrial. *Norquay, supra.*

In *Norquay,* the Nebraska Supreme Court held that the plaintiff's failure to make a motion to strike an expert's testimony, move for a continuance, or seek a mistrial precluded the Supreme Court from reviewing any question concerning the

submission of expert evidence for jury consideration despite discovery violations.

Similarly, in the instant case, we are precluded from addressing the condemnees' contention that the trial court erred in allowing Stevens to testify because NRD failed to supplement Stevens' appraisal report. We are precluded from doing so because the condemnees failed to make a motion striking Stevens' testimony, and failed to move for a continuance or to seek a mistrial. Therefore, this assignment of error is without merit.

*Comparable Properties.*

The condemnees argue that the trial court erred in allowing Stevens to testify regarding the properties Stevens viewed as comparable to the condemned property. NRD contends that all of the properties Stevens listed as comparables and relied upon in valuing the condemned property were proper and that the trial court did not abuse its discretion in allowing evidence of these comparables into evidence.

At trial, Stevens testified that he examined between 20 and 25 other properties which had recently been sold which were similar to the condemned property. Stevens testified that he had narrowed this list down to 13 properties—8 in Papillion, 4 in Gretna, and 1 near Springfield—which he thought were the most comparable.

After Stevens began to testify regarding the specifics of the first comparable Gretna property, the condemnees objected on the ground of lack of foundation and stated that the comparables in Gretna were incompetent, irrelevant, immaterial, and too remote. Initially, the district court sustained the condemnees' objection, stating that in general, the Gretna properties were not good comparables because Gretna is in excess of 10 to 12 miles from the site of the condemned property and because Gretna is not a growing community like Papillion is. Subsequently, the trial court reversed its ruling and allowed NRD to introduce evidence of the Gretna comparables. Upon continuation of Stevens' testimony on direct, Stevens discontinued any discussion of the Gretna comparables and focused instead on five properties located in the Papillion area.

On cross-examination, NRD questioned Stevens about his use of the Gretna properties as comparables in the appraisal report Stevens prepared prior to trial. Subsequently, on redirect, Stevens testified regarding the sale price of the Gretna properties he listed as the most comparable properties in his appraisal report. Stevens did so over the condemnees' objection that such inquiry was beyond the scope of cross-examination. On appeal, the condemnees argue that the district court erred in allowing any evidence regarding the Gretna properties. The condemnees contend that the properties located in Gretna are markedly different than the condemned property and should not have been allowed into evidence.

On this record, the only evidence concerning the Gretna properties which NRD introduced was on redirect after the condemnees cross-examined Stevens about the Gretna properties. We note that by cross-examining Stevens in regard to these Gretna sales, the condemnees may have waived their right to the introduction of such evidence. See *Uryasz v. Archbishop Bergan Mercy Hosp.*, 230 Neb. 323, 431 N.W.2d 617 (1988). Additionally, although the condemnees objected to Stevens' testimony on redirect concerning the sale price of the Gretna properties, they did so on the ground that Stevens' testimony exceeded the scope of cross-examination, a different ground than that proposed by the condemnees on appeal. Where the grounds specified for an objection at trial are different from the grounds advanced on appeal, nothing has been preserved for an appellate court to review. *Benzel v. Keller Indus.*, 253 Neb. 20, 567 N.W.2d 552 (1997).

The condemnees also contend that the district court erred in allowing Stevens to testify on direct examination regarding five comparable properties located in Papillion. The condemnees argue that these properties were also markedly different from the condemned property and should not have been used to value the condemned property. NRD contends that the district court did not err in this regard.

In eminent domain proceedings where the sale prices of other tracts are offered as evidence of the market value of the tract taken, a wide discretion must be granted the trial judge in determining the admissibility of the evidence of the other sales,

but the evidence should not be admitted where there is a marked difference in the situation of the properties. *Smith v. Papio-Missouri River NRD*, 254 Neb. 405, 576 N.W.2d 797 (1998).

At trial in the instant case, the condemnees made a continuing objection to the introduction of these five Papillion properties as irrelevant or immaterial, which objection the trial court repeatedly overruled. Stevens testified in great detail concerning these five sales, noting their similarities to the condemned property and the selling price of each property. The condemnees do not point to, and we do not find, evidence on this record to show that the five Papillion properties Stevens used as comparables are markedly different from the condemned property. Although the record reflects that the Papillion properties are different in various ways, "[t]hese differences are not factors which would render a comparison for the purposes of valuation inadmissible, as they do not demonstrate a marked difference in the situation of the properties. Instead, such differences go toward the weight to be accorded such testimony, not its admissibility." See *Smith*, 254 Neb. at 414, 576 N.W.2d at 804.

On this record, we conclude that the trial court did not abuse its discretion in allowing Stevens to base his opinions as to the fair market value of the condemned property on the above comparables.

*Motion for New Trial.*

On appeal, the condemnees argue that the trial court erred in overruling their motion for new trial. Although the condemnees assign this as error, they fail to discuss this assignment in their brief. Absent plain error, an appellate court considers only claimed errors which are both assigned and discussed. *In re Interest of Torrey B.*, 6 Neb. App. 658, 577 N.W.2d 310 (1998). Therefore, this assignment of error is without merit.

## CONCLUSION

For the reasons set forth above, we conclude that the trial court did not err in regard to Stevens' testimony or in overruling the condemnees' motion for a new trial.

AFFIRMED.