NANCY CASTILLO, APPELLANT, V. MEGAN K. YOUNG
AND MARLYS L. SEARS, APPELLEES.

720 N.W.2d 40

Filed August 18, 2006. No. S-04-1354.

Stanley D. Cohen, of Law Office of Stan Cohen, for appellant.

Stephen L. Ahl and Melanie J. Whittamore-Mantzios, of Wolfe, Snowden, Hurd, Luers & Ahl, L.L.P., for appellee Megan K. Young.

Timothy E. Clarke, Tracy L. Stoehr, and Amanda A. Dutton, of Baylor, Evnen, Curtiss, Grimit & Witt, L.L.P., for appellee Marlys L. Sears.

HENDRY, C.J., CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ., and HANNON, Judge, Retired.

HANNON, Judge, Retired.

## NATURE OF CASE

Nancy Castillo was injured as a result of a three-car accident. The defendant Megan K. Young's vehicle skidded out of control and hit Castillo's vehicle head on in Castillo's lane of traffic, and the defendant Marlys L. Sears' vehicle then struck Castillo's vehicle from the rear. Castillo sued both drivers for negligence. A jury awarded Castillo a verdict of $13,058.67 against Young only. Castillo appeals.

We note that Young has not filed a cross-appeal, and we find no plain error with regard to the issue of liability. Therefore, we affirm that portion of the trial court's judgment. We also note that Castillo has abandoned her claim against Sears. The controlling issue presented by this appeal is whether the trial court erred in failing to give a requested jury instruction on damages for personal injuries. The instruction related to what is frequently referred to as an "eggshell-skull plaintiff." We conclude the trial court erred, and we reverse, and remand for a new trial on the issue of damages.

## STANDARD OF REVIEW

■ Whether a jury instruction given by a trial court is correct is a question of law. When reviewing questions of law, an appellate court has an obligation to resolve the questions independently of the conclusion reached by the trial court. *Roth v. Wiese,* 271 Neb. 750, 716 N.W.2d 419 (2006).

## FACTS

We summarize only those facts that relate to the nature and extent of Castillo's personal injury and damages, and we review

the evidence concerning damages in the light most favorable to Castillo. See *id.*

On December 20, 2000, at approximately 7:30 a.m., Young's vehicle, which was traveling north, crossed the centerline of North 56th Street in Lincoln, Nebraska, and struck Castillo's vehicle head on as she was driving southbound. Castillo's vehicle was equipped with seatbelts, but she was not wearing hers that day. Sears was driving south behind Castillo, and her vehicle came into contact with the rear of Castillo's vehicle when it was stopped by the collision with Young's vehicle.

Castillo stated that as Young's vehicle slid toward her, she saw Young's face, and that Young appeared "terrified." Castillo testified that she closed her eyes at the point of impact and that she heard a crash in the front of her vehicle and another in the back. She was then "jolted awake" and found that her vehicle's airbag had deployed. She had to exit the vehicle through the front passenger door. Photographs show severe damage to the left front and left rear of her vehicle.

After the accident, Castillo's chest was extremely painful and the left side of her jaw became painful. She was taken to the hospital, but released. The next day, her entire upper body was "really painful" and she believed she had broken her jaw again. (Castillo had suffered a broken jaw about 17 years earlier.) On December 22, 2000, she saw her family physician, who prescribed muscle relaxants and referred her to a dentist. The dentist made Castillo a splint, which she was to wear 24 hours a day. Two weeks later, she was given one splint to wear during the day and another to wear at night.

During this period, Castillo reported she had headaches and extreme pain at the base of her skull. She said she felt like her whole back, jaw, and neck were "on fire." She had difficulty opening her mouth and chewing certain foods, including steak, bagels, and apples. She continued treatment with the dentist for about 8 months but quit seeing him because he asked for payment of $110 per month, which Castillo said she could not afford.

In April 2002, Castillo was referred to Daniel Tylka, a doctor of dental medicine, who prescribed another splint and referred her for physical therapy. Tylka, who treated only disorders of the temporomandibular joint and related craniofacial pain problems,

testified that Castillo said her primary complaint was preauricular pain, or pain in front of the ear. She said that it had started about a week after the accident and that it was worse on the right than the left. She said that it was a continuous dull ache and that the pain would occasionally reach 7 or 8 on a scale of 1 to 10. She reported that she began to feel neck pain in January 2001. Her headaches started about a week after the accident, and she described them as dull, achy sensations that occurred two to three times each week. Castillo reported to Tylka that she had fractured her jaw in 1983 but that she had full resolution of that problem prior to the December 2000 accident. Tylka's examination showed that Castillo had full normal lateral movement of her jaw. He found that her jaw was slightly deflected to the right. Tylka diagnosed Castillo as having an articular disk disorder of the left temporomandibular joint. On the right, there was a disk displacement without reduction. She also suffered from myofascial pain involving the jaw and neck muscles.

After an MRI, Tylka determined that Castillo had disk displacement disorders of both temporomandibular joints, and he gave a 5-percent impairment rating to the jaw. Tylka testified:

> [T]here are patients — it's like a truck. If you rear end a truck that's full of bricks, you're probably going to hurt your truck — you're not — you're going to hurt yourself, not the truck. If you rear end a truck full of eggs, you're more likely to do damage than if you rear end a truck full of bricks.
>
> Unfortunately I think in [Castillo's] case, they rear-ended her being full of eggs. She was fragile. . . . Any time you've had injury to a joint that would cause fracture of that bone, there has to be consequence to the system, whether there [are] symptoms provoked at that time or not.

Tylka said he would never know whether Castillo's disk displacement "was a result of that accident or was just there to start with." He stated there was a high probability that Castillo had some disk displacement or problem in the temporomandibular joint prior to the December 2000 automobile accident. However, he said the "symptomatology that she was experiencing was a direct result of the motor vehicle accident."

By May 7, 2002, Castillo reported to Tylka that she was at least 50 percent better. By May 31, Castillo reported that she was

doing much better and was able to laugh and talk without pain. At that time, her neck was her biggest complaint. By June 4, Castillo had reported to Tylka an overall improvement of 70 percent. Tylka last saw Castillo on September 16. By the time Castillo was released by Tylka, she stated that her jaw pain had improved significantly.

Before Tylka moved to Oklahoma and released Castillo from his care, he referred Castillo to Dr. Kathryn Hajj, a physiatrist. Hajj testified that she had evaluated Castillo on July 19, 2002. Castillo reported that she was being treated for temporomandibular joint disorder, or pain in the jaw, and that the pain was referred to her upper back and neck areas. She also had pain in the front of her chest, with numbness and tingling in her right upper extremity that radiated into her right hand, and she had headaches. Castillo told Hajj about the previous broken jaw. Upon examination, Hajj found that Castillo had full range of motion in all directions, no sensory deficits, good strength in her extremities, and a normal gait but that she had deep muscle spasms in her upper back. Hajj diagnosed Castillo as suffering from mild myofascial pain syndrome or muscle pain, and Hajj stated that such pain can be referred to other areas of the body. Hajj believed Castillo had reached maximum medical improvement, and she gave Castillo an 8-percent whole person impairment rating as a result of the accident.

Dr. Michael Huffman, a family practitioner, testified that on March 13, 2003, he saw Castillo for the first time after the accident. She complained of posterior neck and jaw pain and told him she had the pain since she was involved in a motor vehicle accident. He diagnosed her as having cervical neck and temporomandibular joint strain. She visited Huffman again on April 29, and he found her to be in the same condition. Castillo had already seen an oral surgeon and obtained a mouth splint, which she continued to use, and she was continuing neck exercises, physical therapy, and muscle relaxants for the neck pain. On a third visit on October 1, Huffman determined that Castillo had underlying fibromyalgia, which he described as a common but poorly understood pain problem when a person experiences chronic pain in the soft tissues, which are primarily ligaments, tendons, and muscles. Huffman said:

We don't know why these [ligaments, tendons, and muscles] hurt following these types of injuries. But we know that a person's pain perception in these tissues is greatly enhanced, it does not take much pain to create a lot of discomfort. And when it becomes long term, it's commonly referred to as fibromyalgia.

Huffman said Castillo's injuries were not necessarily permanent and that eventually she should heal. Huffman said he would not disagree with Hajj's 8-percent impairment rating due to myofascial pain or Tylka's 5-percent impairment rating of the jaw. Huffman said he could relate the fibromyalgia to the motor vehicle accident to a reasonable degree of medical certainty, but he did not know whether Castillo had fibromyalgia prior to the accident because he had not seen her between 1999 and 2003.

The record showed that Castillo broke her jaw in 1983 or 1984, at which time, the jaw was wired shut. However, Castillo testified that she had fully recovered and had noticed no problems with her neck or shoulders until after the collision with Young. At the time of trial, Castillo said the pain in her jaw would rate a 2 on a scale of 1 to 10, with 10 being the most severe pain. She testified to difficulties completing her usual office work, home chores, and family activities. However, on cross-examination, Castillo said that she was physically able to complete her job duties and that she was able to do most of the activities she could do before the accident. She said she tried to continue the physical therapy as prescribed, which included biting on a tongue depressor eight times per day for 20 seconds each time. She testified that as a result of the accident, she lost about $135 in salary and her car was totaled.

Castillo alleged that she sustained the following injuries as a result of the collision: thoracic outlet syndrome, "[t]emporomandibular joints bilaterally," upper back and neck pain with a burning sensation in the right shoulder and arm, and headaches. She sought damages for an 8-percent whole person impairment, past and future disability and medical expenses, loss of past working time and future earning capacity, and past and future physical pain, mental suffering, and emotional distress. She alleged that her medical expenses to date totaled $12,814.20. As related below, at the jury instruction conference, Castillo's request for an instruction on damages was refused.

The jury determined that Castillo had met her burden of proof against Young, but not against Sears, and awarded judgment of $13,058.67. Castillo filed a motion for additur, asserting that the jury's verdict included grossly inadequate damages, and a motion for new trial. Both motions were overruled. Castillo appeals.

## ASSIGNMENTS OF ERROR

Castillo assigns as error the trial court's failure to submit her proposed jury instruction No. 13 in its entirety. She also asserts that the trial court abused its discretion in overruling her motion for new trial on the basis that the verdict was inadequate as a matter of law and was the result of passion, prejudice, mistake, or some other reason not apparent in the record.

## ANALYSIS

### JURY INSTRUCTION

Castillo's first assignment of error asserts that the trial court erred in failing to give her proposed jury instruction on damages. Instruction No. 13, as given by the court, stated:

> There is evidence that the Plaintiff had broken her jaw in 1983 and experienced a dis[k] displacement in her jaw prior to the December 20, 2000, accident.
>
> The Defendant(s) is liable only for any damages that you find to be proximately caused by the Defendants' negligence relating to the December 20, 2000, accident.
>
> If you cannot separate damages caused by the pre [sic] existing broken jaw from those caused by the accident of December 20, 2000, then the Defendant(s) are liable for all of those damages.

The instruction requested by Castillo stated:

> There is evidence that the Plaintiff had a broken jaw 20 years before the accident on December 20, 2000. The Defendant(s) is (are) liable only for any damages that you find [were] proximately caused by the accident on December 20, 2000.
>
> If you cannot separate damages caused by the pre [sic] existing broken jaw from those caused by the accident of December 20, 2000, then the Defendant(s) is (are) liable for all of those damages.

The defendant's [sic] may be liable for bodily harm to Nancy Castillo even though the injury is greater than usual due to the physical condition which predisposed Nancy Castillo to the injury. In short, the defendant's [sic] take the plaintiff as they find her.

Authority: Kett[e]ler v. Dan[i]el, 251 Neb. 287 (1996).

During the jury instruction conference, the trial court considered the paragraph that Castillo sought to include in the instruction. The court declined, stating: "It's designed for the person with the unusual physical characteristic, like the eggshell knee, not an aggravation of a pre-existing injury, so I'm not going to give that. I don't think it's applicable in this case. I think this covers the situation better."

█ The instruction as given by the trial court was a correct statement of the law as far as it goes, but it does not cover the theory of damages concerning a preexisting condition, which was adopted by this court in *McCall v. Weeks*, 183 Neb. 743, 164 N.W.2d 206 (1969). In *David v. DeLeon*, 250 Neb. 109, 114, 547 N.W.2d 726, 729 (1996), this court reiterated "the theory of the 'eggshell-skull' plaintiff," which was originally adopted in *McCall v. Weeks, supra*. In *David v. DeLeon*, this court stated:

Under *McCall*, the right of a person suffering from a disease, who is injured by reason of the negligence of another, to recover for all damages proximately resulting from the negligent act includes the right to recover for an aggravation of the preexisting disease. This holding served as authority in this case for the decision of the trial court to issue the entirety of NJI2d Civ. 4.09 as its instruction on damages.

250 Neb. at 114, 547 N.W.2d at 729-30.

When presenting her proposed instruction to the trial court, Castillo relied on *Ketteler v. Daniel*, 251 Neb. 287, 556 N.W.2d 623 (1996), in which the plaintiff was injured in an automobile accident. There was evidence that prior to the accident, the plaintiff had two preexisting conditions, and the trial court gave an instruction similar to the one requested by Castillo. The instruction stated, in summary, that the jury was to grant an award only for damages proximately caused by the accident. If the jury could not separate the damages caused by the preexisting condition from those caused by the accident, then the defendant was

liable for all of the damages, and the defendant could be liable for bodily harm even though the injury was greater due to a physical condition which predisposed the plaintiff to injury. The instruction provided that a defendant takes a plaintiff as the defendant finds him or her.

In *Ketteler v. Daniel, supra*, the evidence showed that the plaintiff had two preexisting conditions which could have been adversely affected by the collision. In addition to a neck, back, and hip condition, she had breast implants that could have ruptured as a result of the collision. There was also evidence that the implants could have ruptured because of their age. The instruction given to the jury referred to only the neck, back, and hip condition and did not refer to the breast implants. That failure was held to be reversible error.

In *David v. DeLeon, supra*, the plaintiff had preexisting knee and spine conditions which degenerated following the collision. The evidence was in conflict as to whether the degeneration was causally related to the collision or whether it was a natural degeneration. The trial court gave an instruction stating that defendants take plaintiffs as they find them. This was held to be correct, and the trial court's judgment was affirmed.

The holdings of these cases clearly establish the rule that if a plaintiff has a preexisting condition and the defendant's conduct resulted in greater damages because of that preexisting condition, the defendant is nonetheless liable for all damages proximately caused by the defendant's conduct. In this appeal, we must determine whether the evidence supports a finding that the collision aggravated Castillo's jaw condition.

Castillo had broken her jaw several years before the December 2000 collision, but she testified she had a complete recovery and had no symptoms for a number of years. Her testimony concerning the pain in her jaw following the collision is summarized above.

Tylka first examined Castillo on April 3, 2002. He testified that Castillo had an "articular dis[k] disorder of the left temporomandibular joint," which he described as "basically a dis[k] displacement with reduction." He found tenderness in many of the muscles and concluded that Castillo had "myofa[s]cial pain involving the upper quadrant, not only the jaw muscles but

a lot of the neck muscles as well" and "tenderness in the insertion of the temporalis muscle, suggesting the possibility of a secondary temporalis tendonitis." He opined that it was likely Castillo had a joint displacement prior to the accident and that the accident "definitely aggravated what [Tylka] believe[d] was a preexisting displacement."

After relating the course of Castillo's treatment, Tylka opined that Castillo had a 5-percent impairment of her jaw because of her condition as of the day of his deposition. He stated that he did not know if the accident was responsible for the entire impairment, but he testified that he definitely thought part of the 5-percent impairment was related to the accident.

Tylka testified that studies have shown that as many as one-third of the population has an undiagnosed disk displacement. He opined that Castillo's accident might not have caused the joint disorder but that it caused the pain associated with the disorder. He testified that he had explained to Castillo that she was not going to return to a time when she did not have pain in the joint and that she should continue to sleep with an orthodontic device and avoid hard or chewy foods.

Tylka testified that there was at least "an aggravation of a preexisting condition." He then explained his opinion by stating that he has given depositions before concerning trauma patients and that "I think I've had attorneys put it in this way." He then provided the analogy about the truck loaded with eggs as opposed to bricks that is quoted above. He further stated: "Whether this — the dis[k] displacement was a result of that accident or was just there to start with, we'll never know. But yes, I believe the symptomatology that she was experiencing was a direct result of the motor vehicle accident." He stated that his opinion was within a reasonable degree of medical certainty. There is evidence in the record which disputes Tylka's opinion, but his testimony, if believed, would support giving the instruction requested by Castillo, who, as the successful party, is entitled to every reasonable inference deducible from the evidence. See *Roth v. Wiese*, 271 Neb. 750, 716 N.W.2d 419 (2006).

▮ This court has often noted that to establish reversible error from a court's failure to give a requested jury instruction, an appellant has the burden to show that (1) the tendered

instruction is a correct statement of the law, (2) the tendered instruction was warranted by the evidence, and (3) the appellant was prejudiced by the court's failure to give the requested instruction. *Id.* Whether a jury instruction given by a trial court is correct is a question of law. When reviewing questions of law, an appellate court has an obligation to resolve the questions independently of the conclusion reached by the trial court. *Id.*

In *Ketteler v. Daniel,* 251 Neb. 287, 298, 556 N.W.2d 623, 630 (1996), when this court concluded that an instruction requested by the plaintiff should have been given, the court stated:

> First, the proffered instruction correctly stated the law. Second, the instruction was warranted by the evidence offered by [the defendant's expert witness], who testified that [the plaintiff] suffered from fibromyalgia prior to the accident, and by [the plaintiff's family physician], who testified by deposition that [the plaintiff] had suffered from back and neck conditions prior to the accident which were aggravated by the accident. Finally, refusal by the trial court to submit the entire proposed instruction was prejudicial to [the plaintiff].

For the same reasons, we conclude Castillo was prejudiced by the trial court's failure to give the proffered instruction in this case. We find that a new trial on the issue of damages is warranted.

INADEQUACY OF VERDICT

■ Castillo's second assignment of error asserts that the trial court abused its discretion in overruling her motion for new trial on the basis that the verdict was inadequate. Because we are ordering a new trial on the issue of damages, a discussion of the adequacy of the verdict is not necessary. An appellate court is not obligated to engage in an analysis which is not needed to adjudicate the controversy before it. *Gary's Implement v. Bridgeport Tractor Parts,* 270 Neb. 286, 702 N.W.2d 355 (2005).

CONCLUSION

■ Because the trial court erred in its jury instruction on damages, Castillo is entitled to a new trial on that issue. The jury determined the liability issue in favor of Castillo and Sears, and Castillo has abandoned her claim against Sears. When no liability

issues remain to be litigated, the cause is remanded for a new trial on the issue of damages only. See *Selders v. Armentrout*, 190 Neb. 275, 207 N.W.2d 686 (1973).

Therefore, the judgment of the trial court as to liability is affirmed, the judgment as to damages is reversed, and the cause is remanded for a new trial on the issue of damages only.

AFFIRMED IN PART, AND IN PART REVERSED
AND REMANDED FOR A NEW TRIAL ON
THE ISSUE OF DAMAGES.

WRIGHT, J., not participating.