JAN J. GOLNICK, APPELLANT, V.
JACK W. CALLENDER, APPELLEE.
___ N.W.2d ___

Filed March 20, 2015.    No. S-14-032.

1. **Pleadings: Appeal and Error.** Permission to amend a pleading is addressed to the discretion of the trial court, and an appellate court will not disturb the trial court's decision absent an abuse of discretion.
2. **Jury Instructions: Appeal and Error.** Whether a jury instruction is correct is a question of law, which an appellate court independently decides.
3. **Pleadings.** A district court's denial of leave to amend pleadings is appropriate only in those limited circumstances in which undue delay, bad faith on the part of the moving party, futility of the amendment, or unfair prejudice to the nonmoving party can be demonstrated.
4. **Negligence: Evidence.** A defendant's tortious conduct is a question of fact that a defendant can judicially admit.
5. **Negligence: Motor Vehicles: Evidence: Proximate Cause.** When a defendant in a vehicle accident case admits to negligently causing the accident but denies the nature and extent of the plaintiff's injuries, evidence of the collision itself is admissible. In that circumstance, proximate causation is at issue and the evidence is relevant to show the nature of the contact and its force.
6. **Pleadings: Evidence.** A court's discretion to admit or exclude cumulative evidence on an admitted fact also applies to a court's decision to allow a pleading amendment that results in the production of that evidence.
7. **Rules of the Supreme Court: Pleadings.** In exercising its discretion to permit or deny an amendment regarding an admitted fact, a court should consider the prevailing factors under Neb. Ct. R. Pldg. § 6-1115(a). It should also consider whether the new allegations are relevant to a component of a party's claim or defense that the nonmoving party has not admitted.
8. **Negligence: Damages.** Nebraska law does not permit a plaintiff to obtain punitive damages over and above full compensation for the plaintiff's injuries.
9. **Negligence: Evidence.** In a negligence case, evidence intended to punish a defendant's conduct or deter similar conduct is not at issue.
10. **Trial: Evidence: Juries: Final Orders.** A motion in limine is a procedural step to prevent prejudicial evidence from reaching the jury, but the court's ruling on the motion is not a final order.
11. **Trial: Evidence: Appeal and Error.** To preserve error regarding a court's order in limine, a party resisting the order must make an appropriate objection or offer of proof at trial.
12. **Jury Instructions: Proof: Appeal and Error.** To establish reversible error from a court's failure to give a requested jury instruction, an appellant has the burden to show that (1) the tendered instruction is a correct statement of the law, (2) the tendered instruction was warranted by the evidence, and (3) the appellant was prejudiced by the court's failure to give the requested instruction.

13. **Jury Instructions: Appeal and Error.** Jury instructions do not constitute prejudicial error if, taken as a whole, they correctly state the law, are not misleading, and adequately cover the issues supported by the pleadings and evidence.

14. **Negligence: Jury Instructions: Damages.** In a negligence case, a court should instruct a jury on damages for the aggravation of a preexisting condition if the evidence would support that finding.

15. **Juries: Verdicts: Presumptions.** When the jury returns a general verdict for one party, an appellate court presumes that the jury found for the successful party on all issues raised by that party and presented to the jury.

16. **Damages: Words and Phrases.** In Nebraska, hedonic damages—which are damages to compensate a plaintiff for the loss of enjoyment of life resulting from his or her physical injuries—are subsumed within a plaintiff's damages for pain and suffering. They are not a separate category of damages.

17. **Jury Instructions: Appeal and Error.** A court does not err in failing to give an instruction if the substance of the proposed instruction is contained in those instructions actually given.

18. **Jurors.** There is no public right of access to the jurors' deliberations themselves.

19. **Constitutional Law: Jurors: Rules of Evidence.** Because there is no constitutional right to obtain information about a jury's deliberations, a court's discretion under Neb. Rev. Stat. § 25-1635 (Reissue 2008) to disclose juror information for good cause shown after a verdict should be tempered by the restrictions imposed under Neb. Evid. R. 606(2), Neb. Rev. Stat. § 27-606(2) (Reissue 2008).

20. **Rules of Evidence: Judgments: Jury Misconduct.** Neb. Evid. R. 606(2), Neb. Rev. Stat. § 27-606(2) (Reissue 2008), promotes the public interests of protecting jurors' freedom of deliberation and the finality of judgments, absent a plausible allegation of juror misconduct.

21. **Jury Misconduct: Evidence.** When an allegation of jury misconduct is made and is supported by a showing which tends to prove that serious misconduct occurred, the trial court should conduct an evidentiary hearing to determine whether the alleged misconduct actually occurred.

22. **Rules of Evidence: Verdicts: Jurors: Affidavits.** Neb. Evid. R. 606(2), Neb. Rev. Stat. § 27-606(2) (Reissue 2008), prohibits admission of a juror's affidavit to impeach a verdict on the basis of the jury's motives, methods, misunderstanding, thought processes, or discussions during deliberations, which enter into the verdict.

23. **Jurors: Verdicts.** Absent a reasonable ground for investigating, posttrial interviews with jurors cannot be used as a fishing expedition to find some reason to attack a verdict.

Appeal from the District Court for Douglas County: J. Michael Coffey, Judge. Affirmed.

Matthew A. Lathrop, of Law Office of Matthew A. Lathrop, P.C., L.L.O., for appellant.

Joseph E. Jones and Alexander D. Boyd, of Fraser Stryker, P.C., L.L.O., for appellee.

James E. Harris, of Harris Kuhn Law Firm, L.L.P., for amicus curiae Nebraska Association of Trial Attorneys.

Heavican, C.J., Wright, Connolly, Stephan, McCormack, Miller-Lerman, and Cassel, JJ.

Connolly, J.

## I. SUMMARY

Jan J. Golnick appeals from the district court's judgment in his negligence action against Jack W. Callender. Callender amended his answer to admit that he was negligent in causing the vehicle accident that injured Golnick. Thereafter, the court sustained Callender's motion to preclude evidence of his negligence at trial. The court also denied Golnick's request to amend his complaint to allege specific acts of tortious conduct and rejected three of his proposed jury instructions. The jury returned a verdict for Callender. Finding no reversible error, we affirm.

## II. BACKGROUND

In October 2009, Golnick filed a complaint alleging that in October 2005, he and Callender were driving on the same street in opposite directions when Callender's vehicle crossed the centerline and crashed head on into Golnick's vehicle. He alleged that he sustained injuries as a "direct and proximate result of the crash."

In Callender's original answer, he denied that the accident occurred as Golnick alleged. In 2013, Callender sought leave to file an amended answer. He still denied that the accident occurred as Golnick alleged, but he admitted that "he was negligent and that his negligence was the proximate cause of the accident." He denied the nature and extent of Golnick's injuries and all other allegations.

Golnick objected to the amendment and moved to file an amended complaint, which would have alleged that when Callender crossed the centerline, he was distracted by his cell phone. At the hearing on the parties' proposed amendments,

Golnick offered a police report to show that (1) an issue of fact existed regarding Callender's denial that the accident happened as Golnick alleged and (2) Callender had not admitted to the relevant facts regarding the alleged negligence. The court received the police report for deciding whether to allow the pleading amendments.

At the hearing, the court stated that Golnick wanted to "put in evidence to make [Callender] more liable than just the admitting of negligence. You want to make him derelict." The court concluded that the issue was whether Callender had "proper control of his car, not whether he was on his cell phone." The court overruled Golnick's objections to Callender's amended answer and overruled Golnick's request to amend his complaint.

Callender then moved for an order in limine to prohibit Golnick from presenting any evidence about Callender's negligence. As relevant here, Callender sought to exclude (1) evidence that he was distracted by his cell phone and (2) evidence that he was cited, charged, or convicted of a traffic violation because of the accident. Callender also sought to admit evidence of Golnick's pleadings in a pending negligence case about a 2007 vehicle accident involving Golnick. In both cases, Callender alleged that the accident caused Golnick to have permanent injuries to his neck, head, shoulder, and back. The court's rulings on these motions are not part of the record.

At the start of the trial, the court briefly explained to the jurors that while Golnick and Callender were traveling on the same street, Callender's vehicle crossed the centerline and struck Golnick's vehicle. The court also explained that because Callender admitted that his negligence caused the collision, they would not have to decide the cause of the collision.

In Golnick's opening statement, his attorney told the jurors that Callender had veered into oncoming traffic and hit Golnick's vehicle head on when Callender saw that the traffic in front of him had stopped. His attorney said that Golnick's preexisting eye problems and preexisting back problems did not account for the eye problems and back problems that Golnick began to experience within a month

after the accident. He also stated that Golnick's problems were not caused by a severe 2007 accident in which Golnick was struck from behind. He admitted that Golnick's problems were permanently worsened by the 2007 accident. But he stated that Golnick had already sustained permanent injuries before 2007 and that his pain had never gone away. In Callender's opening statement, his attorney listed evidence that would show the 2005 accident did not cause Golnick's physical problems.

At trial, the evidence showed that Golnick was age 71 and had some preexisting health problems before the 2005 accident. The court admitted a photograph of his vehicle that showed minor damage to the front bumper and grill. Golnick did not attempt to submit evidence on Callender's distraction by his cell phone or make an offer of proof on that fact. The court admitted the pleadings in the 2007 action.

At the jury instruction conference, the court rejected Golnick's proposed jury instructions Nos. 2, 3, and 4. The jury returned a unanimous verdict for Callender. After entering judgment for Callender, the court denied Golnick's request to obtain the name, address, and telephone number for each juror.

## III. ASSIGNMENTS OF ERROR

Golnick assigns that the court erred as follows:

(1) not allowing Golnick to amend his complaint to allege specific acts of negligence;

(2) overruling Golnick's objection to Callender's motion to amend his answer;

(3) permitting Callender to deny that the collision occurred in the manner Golnick alleged while admitting that his negligence caused the collision;

(4) sustaining Callender's motion in limine to prohibit Golnick from telling jurors that Callender had admitted to specific acts of negligence, including using a cell phone;

(5) rejecting Golnick's requested jury instruction No. 4 on the "Statement of the Case";

(6) rejecting Golnick's requested jury instruction No. 3 on aggravation of a preexisting condition;

(7) rejecting Golnick's requested jury instruction No. 2 on damages; and

(8) denying Golnick's posttrial request for juror information.

## IV. STANDARD OF REVIEW

[1,2] Permission to amend a pleading is addressed to the discretion of the trial court, and an appellate court will not disturb the trial court's decision absent an abuse of discretion.[1] Whether a jury instruction is correct is a question of law, which an appellate court independently decides.[2]

## V. ANALYSIS

### 1. Court Did Not Abuse Its Discretion in Granting Callender Leave to Amend His Answer

Golnick contends that the court erred in permitting Callender to amend his answer to admit that he was negligent while he was still denying that the accident occurred as Golnick alleged. He argues that parties can only admit facts within their knowledge, not legal conclusions. Callender counters that negligence and proximate cause are questions of fact and that we have previously allowed defendants to admit negligence and causing an accident without admitting to causing the plaintiff's injuries.

[3] Under Neb. Ct. R. Pldg. § 6-1115(a), leave to amend "shall be freely given when justice so requires." A district court's denial of leave to amend pleadings is appropriate only in those limited circumstances in which undue delay, bad faith on the part of the moving party, futility of the amendment, or unfair prejudice to the nonmoving party can be demonstrated.[3] Golnick argues that the court's ruling precluded him from producing relevant evidence on Callender's

---

[1] *InterCall, Inc. v. Egenera, Inc.*, 284 Neb. 801, 824 N.W.2d 12 (2012).

[2] *Credit Bureau Servs. v. Experian Info. Solutions*, 285 Neb. 526, 828 N.W.2d 147 (2013).

[3] *InterCall, Inc., supra* note 1.

negligence. We disagree that Callender's amendment prejudiced Golnick.

[4,5] Callender correctly argues that a defendant's tortious conduct is a question of fact[4] that a defendant can judicially admit.[5] A defendant can admit to negligently causing an accident without admitting to causing the plaintiff's injuries.[6] But when a defendant in a vehicle accident case admits to negligently causing the accident but denies the nature and extent of the plaintiff's injuries, evidence of the collision itself is admissible. In *Springer v. Smith*,[7] we explained that proximate causation is at issue in that circumstance and that the evidence is "relevant to show the nature of the contact and its force." As the Restatement (Third) of Torts[8] explains, determining whether an act is a factual cause of an outcome requires the fact finder to make an inference based on personal experience and some understanding of the causal mechanism. And we have previously recognized that proving tortious conduct is crucial to a causal inquiry.[9] So, to the extent that a defendant's tortious conduct is relevant to proving *how* the conduct caused the plaintiff's injuries, the production of such evidence is unaffected by an admission, standing alone, that the defendant negligently caused a vehicle accident.

Accordingly, Callender's admission did not preclude Golnick from producing evidence relevant to proving the nature and force of the accident (the causal mechanism) resulting in Golnick's injuries. Nor did the court's order in

---

[4] See *Downey v. Western Comm. College Area*, 282 Neb. 970, 808 N.W.2d 839 (2012).

[5] See, e.g., *Huber v. Rohrig*, 280 Neb. 868, 791 N.W.2d 590 (2010).

[6] See *Cooper v. Hastert*, 175 Neb. 836, 124 N.W.2d 387 (1963).

[7] See *Springer v. Smith*, 182 Neb. 107, 110, 153 N.W.2d 300, 302 (1967).

[8] See Restatement (Third) of Torts: Liability for Physical and Emotional Harm § 28, comment *b*. (2010).

[9] See *C.E. v. Prairie Fields Family Medicine*, 287 Neb. 667, 844 N.W.2d 56 (2014), citing Restatement, *supra* note 8, § 26, comment *h*.

limine preclude this evidence. Because Golnick was free to present this evidence, Callender's admission that he negligently caused the accident was a conclusive fact that Golnick could use to his advantage.[10] We conclude that the court's granting Callender leave to amend his answer did not unfairly prejudice Golnick. We recognize that Golnick's argument on this issue is intertwined with his contention that the court should have permitted him to amend his complaint. But that argument does not change our conclusion.

## 2. Court Did Not Abuse Its Discretion in Denying Golnick's Request to Amend His Complaint

Before trial, Golnick also moved to amend his complaint to include specific acts of Callender's negligence—most significantly, Callender's distraction by his cell phone—that caused the accident. Golnick contends that the court erred in denying his request to amend. He argues that Callender would not have been unfairly prejudiced by requiring him to admit to more specific negligent conduct. The amicus curiae, the Nebraska Association of Trial Attorneys, argues that the court's ruling deprived the jury of hearing the full factual basis for determining that Callender's negligence caused Golnick's injuries. The association also contends that courts should not permit parties to stipulate or admit their way out of the presentation of unfavorable evidence. Callender argues that because he admitted to negligently causing the accident, the only remaining issue for trial was the nature and extent of Golnick's injuries, and that additional allegations of negligence were irrelevant to damages.

As explained, Callender did not admit to causing Golnick's injuries, so Callender incorrectly argues that the only issue for trial was damages. But here, allowing the amendment would have permitted Golnick to prove Callender's specific acts of negligence. And because Callender admitted to

---

[10] See, e.g., *Sack Bros. v. Tri-Valley Co-op*, 260 Neb. 312, 616 N.W.2d 786 (2000).

negligently causing the accident, the decision whether to admit or exclude Golnick's evidence would have been a matter of judicial discretion:

> A fact that is judicially admitted *needs* no evidence from the party benefiting by the admission. But his evidence, if he chooses to offer it, *may* even be *excluded*; first, because it is now as immaterial to the issues as though the pleadings had marked it out of the controversy . . . ; next, because it may be superfluous and merely cumber the trial . . . ; and furthermore, because the added dramatic force which might sometimes be gained from the examination of a witness to the fact (a force, indeed, which the admission is often designed especially to obviate) is not a thing which the party can be said to be always entitled to.
>
> Nevertheless, a colorless admission by the opponent may sometimes have the effect of depriving the party of the legitimate *moral force of his evidence*; furthermore, a judicial admission may be cleverly made with grudging limitations or evasions or insinuations (especially in criminal cases), so as to be technically but not practically a waiver of proof. Hence, there should be no absolute rule on the subject; and the trial court's discretion should determine whether a particular admission is so plenary as to render the first party's evidence wholly needless under the circumstances.[11]

[6,7] We conclude that the same discretion to admit or exclude cumulative evidence on an admitted fact also applies to a court's decision to allow a pleading amendment that results in the production of that evidence. As stated, the considerations under our pleading rules are undue delay, bad faith, unfair prejudice, and futility of the amendment.[12] So if the court determines that it will not permit the party to produce a piece of evidence, then the party's amendment of the

---

[11] 9 John Henry Wigmore, Evidence in Trials at Common Law § 2591 at 824 (James H. Chadbourn rev. ed. 1981) (emphasis in original).

[12] See § 6-1115(a).

pleading to allege this fact would be futile.[13] In exercising its discretion to permit or deny an amendment regarding an admitted fact, a court should consider the prevailing factors under § 6-1115(a). It should also consider whether the new allegations are relevant to a component of a party's claim or defense that the nonmoving party has not admitted.

Here, because Callender had admitted to negligently causing the collision, Golnick's proposed allegations regarding Callender's distraction by his cell phone and other negligent acts were needless proof on the issue of tortious conduct. No other tort-feasor contributed to the accident, and Callender did not allege contributory negligence. So allocation of fault was not at issue. Nor did the court's order denying the amendment preclude Golnick from presenting evidence to show how Callender's conduct caused Golnick's injuries.

[8,9] Moreover, Nebraska law does not permit a plaintiff to obtain punitive damages over and above full compensation for the plaintiff's injuries.[14] This means that in a negligence case, evidence intended to punish a defendant's conduct or deter similar conduct is not at issue. We have previously upheld a district court's mistrial order because the plaintiff suggested that the defendant's intoxication was the reason that he negligently caused a vehicle accident when the defendant had admitted to negligently causing the accident and the court had precluded the intoxication evidence.[15]

Finally, we reject the Nebraska Association of Trial Attorneys' argument that the U.S. Supreme Court's decision in *Old Chief v. United States*[16] applies to this civil case. There,

---

[13] See, *Chaveriat v. Williams Pipe Line Co.*, 11 F.3d 1420 (7th Cir. 1993); *Harris v. Equilon Enterprises, LLC*, 107 F. Supp. 2d 921 (S.D. Ohio 2000); *Hartnett v. Globe Firefighter Suits, Inc.*, No. 97-2156, 1998 WL 390741 (4th Cir. June 29, 1998) (unpublished disposition listed in table of "Decisions Without Published Opinions" at 155 F.3d 559 (4th Cir. 1998)).

[14] See, e.g., *Distinctive Printing & Packaging Co. v. Cox*, 232 Neb. 846, 443 N.W.2d 566 (1989); *Abel v. Conover*, 170 Neb. 926, 104 N.W.2d 684 (1960).

[15] See *Huber, supra* note 5.

[16] *Old Chief v. United States*, 519 U.S. 172, 117 S. Ct. 644, 136 L. Ed. 2d 574 (1997).

the Court held that a district court abuses its discretion under Fed. R. Evid. 403 if it spurns a defendant's offer to concede a prior judgment and instead admits the full judgment over the defendant's objection. The Court reasoned that the evidence was unnecessary to prove a defendant's felon status at the time he illegally possessed a gun. There, the jury's knowledge of the name or nature of the prior offense raised the risk that a guilty verdict would be tainted by improper considerations and the evidentiary alternative did not interfere with the government's presentation of its case. But the Court extensively discussed the importance of normally allowing prosecutors to present coherent narrative evidence in criminal cases. It explained that interruptions for abstract admissions could make jurors think the government is withholding material evidence and possibly be less willing to vindicate the public's interest in punishing the crime.

In a negligence case, however, the plaintiff is not vindicating the public's interest in punishing the defendant's wrongful conduct and is not concerned with a juror's possible reluctance to do so. A plaintiff's interest in a negligence case is limited to compensation for the harm caused by the defendant's tortious conduct. So the reasoning in *Old Chief* does not apply. We conclude that the court did not abuse its discretion in denying Golnick's request to amend his complaint.

### 3. Golnick Failed to Preserve
### Error Assigned to Court's
### Order in Limine

Golnick contends the court erred in sustaining Callender's motion in limine to prohibit Golnick from producing evidence of Callender's distraction by his cell phone. But Golnick did not obtain a final order on this exclusion by offering proof at trial of the evidence that he believed was admissible.

[10,11] A motion in limine is a procedural step to prevent prejudicial evidence from reaching the jury, but the court's ruling on the motion is not a final order.[17] To preserve error regarding a court's order in limine, a party resisting the

---

[17] See, e.g., *Christian v. Smith*, 276 Neb. 867, 759 N.W.2d 447 (2008).

order must make an appropriate objection or offer of proof at trial.[18] Because Golnick failed to preserve his assigned error, we do not consider the court's order in limine beyond what was necessary to dispose of Golnick's assignments regarding the court's rulings on the parties' motions to amend their pleadings.

### 4. Court's Jury Instructions Were Correct or Not Prejudicial

Golnick contends that the court erred in failing to give three of his proposed jury instructions.

[12,13] To establish reversible error from a court's failure to give a requested jury instruction, an appellant has the burden to show that (1) the tendered instruction is a correct statement of the law, (2) the tendered instruction was warranted by the evidence, and (3) the appellant was prejudiced by the court's failure to give the requested instruction.[19] Jury instructions do not constitute prejudicial error if, taken as a whole, they correctly state the law, are not misleading, and adequately cover the issues supported by the pleadings and evidence.[20]

### (a) Court Properly Rejected Golnick's Proposed Jury Instruction No. 4

Golnick contends that the court erred in failing to give his proposed jury instruction No. 4. That instruction would have informed the jury of the specific ways in which Golnick believed that Callender was negligent while driving. Golnick does not argue this assignment except to state that there was evidence to sustain the allegations. We conclude that this argument is subsumed by our analysis of the court's ruling on the parties' motions to amend their pleadings. As noted, the court did not abuse its discretion in allowing Callender to admit his negligence and denying Golnick leave to amend his complaint. So it correctly determined that Callender's specific acts of negligence were not factual questions for the jury to decide.

---

[18] See *id.*

[19] *InterCall, Inc.*, *supra* note 1.

[20] *Wulf v. Kunnath*, 285 Neb. 472, 827 N.W.2d 248 (2013).

### (b) Court's Failure to Specifically Instruct
### Jury on Golnick's Aggravation Damages
### Was Not Prejudicial Error

At trial, the court instructed the jury as follows on the effect of Golnick's preexisting back problems:

> There is evidence that [Golnick] had spinal stenosis prior to the collision of October 5, 2005. [Callender] is liable only for any damages that you find to be proximately caused by the collision.
>
> If you cannot separate damages caused by the preexisting condition from those caused by the collision, then [Callender] is liable for all of those damages.

Golnick's proposed instruction No. 3 would have added a third paragraph: "This is true even if the person's condition made him more susceptible to the possibility of ill effects than a normally healthy person would have been, and even if a normally healthy person probably would not have suffered any substantial injury."

The first paragraph of the court's instruction is the standard jury instruction No. 4.09 for determining damages when the plaintiff has a preexisting condition.[21] The second paragraph is frequently called the "apportionment" instruction.[22] It is appropriately used when the jury may be unable to precisely determine which of the plaintiff's damages were not preexisting.[23]

Golnick contends that the court erred in failing to give his proposed third paragraph. He argues that the court's instruction did not explain that the jury could find Callender liable for aggravating Golnick's preexisting condition even if the preexisting condition made him more susceptible to a greater injury than what might normally occur. Golnick argues that in *Ketteler v. Daniel*,[24] we required an instruction like the one he proposed for a plaintiff with a preexisting condition. And he

---

[21] See NJI2d Civ. 4.09.

[22] *Gustafson v. Burlington Northern RR. Co.*, 252 Neb. 226, 561 N.W.2d 212 (1997).

[23] See *David v. DeLeon*, 250 Neb. 109, 547 N.W.2d 726 (1996).

[24] *Ketteler v. Daniel*, 251 Neb. 287, 556 N.W.2d 623 (1996).

argues that the jury may have denied him a recovery because it concluded his back injury would not have occurred absent his preexisting condition.

Callender argues that the court did not err in using the pattern jury instruction and the additional instruction for cases in which the jury may not be able to separate damages caused solely by the tortious act. He argues that Golnick has pointed to no evidence that his preexisting condition made him more susceptible to his claimed injuries. Additionally, Callender argues that Golnick's proposed instruction is not the same as the instruction in *Ketteler*. He argues that the Nebraska Court of Appeals has approved of the instruction that the court gave. Finally, because the jury returned a unanimous general verdict form for him, Callender argues that they presumptively decided all the issues in his favor. Because of the general verdict, he contends that whether Golnick was more susceptible to injury is irrelevant.

In *Ketteler*, an issue at trial was whether the plaintiff's fibromyalgia was a preexisting condition or the accident caused it. The court instructed the jury that there was evidence the plaintiff had neck, back, and hip problems before the accident and that the defendant was liable only for damages that the jury found to be proximately caused by the accident. The plaintiff proposed submitting two additional components to this instruction, which the court rejected. The first proposed component was the same as the apportionment instruction given here: "'If you cannot separate damages caused by the pre-existing condition from those caused by the accident, then the Defendant is liable for all of those damages.'"[25] The second proposed component was directed at the aggravation of preexisting condition: "'The Defendant may be liable for bodily harm to [the plaintiff] even though the injury is greater than usual due to the physical condition which predisposed [her] to the injury. In short, the Defendant takes the Plaintiff as he finds her.'"[26] The jury returned a verdict for

---

[25] *Id.* at 296, 556 N.W.2d at 629.

[26] *Id.*

the plaintiff, but she appealed the court's rejection of her proposed instruction.

We held that the court should have submitted the plaintiff's entire proposed instruction. We explained that because we had adopted the "eggshell-skull" theory of liability, a plaintiff is entitled to recover damages for the aggravation of a preexisting condition. We concluded that there was evidence to support such damages and that the court's refusal to submit the entire instruction prejudiced the plaintiff.

We reached the same conclusion in *Castillo v. Young*,[27] another case in which there was evidence to support a finding that the defendant's negligence had aggravated a preexisting condition. The court gave the first two components of the instruction for determining damages when the jury may be unable to precisely determine which of the plaintiff's damages were not preexisting. The only difference in the plaintiff's instruction that the court rejected was the third component— the aggravation instruction—that we had approved in *Ketteler*. We reversed the trial court's refusal to give this instruction because the instruction given did not cover the plaintiff's theory of damages for aggravation of a preexisting disease. Because there was evidence to support such damages, the court's failure to give the aggravation instruction prejudiced the plaintiff.

[14] In a negligence case, these cases clearly required a court to instruct a jury on damages for the aggravation of a preexisting condition if the evidence would support that finding. In the Court of Appeals' case on which Callender relies, the court reversed the trial court's refusal to give the apportionment instruction. But the absence of an instruction on the aggravation of a preexisting condition was not at issue.[28] So the case is not authority for Callender's position.

It is true that Golnick's proposed instruction is not the same as the instruction that was required in *Ketteler* and *Castillo*. His alternative language was part of a jury instruction

---

[27] *Castillo v. Young*, 272 Neb. 240, 720 N.W.2d 40 (2006).

[28] See *Higginbotham v. Sukup*, 15 Neb. App. 821, 737 N.W.2d 910 (2007).

discussed in *Gustafson v. Burlington Northern RR. Co.*,[29] but that particular language was not at issue. Under our previous case law, however, Golnick's proposed instruction was sufficient to put the court on notice that it must instruct the jury on his theory of damages if his evidence supported a finding of aggravation damages. And there was sufficient evidence to support that finding.

However, we conclude that under these circumstances, Golnick was not prejudiced by the court's failure to specifically instruct the jury that it could award damages for Golnick's injuries, even if his preexisting condition made him more susceptible to injury. The jury's authority to award damages for the aggravation of a preexisting condition was at least implied in the apportionment instruction: "If you cannot separate damages caused by the preexisting condition from those caused by the collision, then [Callender] is liable for all of those damages." And the record shows that in closing argument, Golnick specifically asked the jury to award damages caused by the aggravation of his spinal and eye conditions. So when Golnick's closing argument is considered with the apportionment instruction, the jury likely understood that it could award damages for the aggravation of a preexisting condition.

[15] Additionally, this case is distinguishable from *Ketteler* and *Castillo* because in those cases, the jury awarded damages to the plaintiff even if the plaintiff was unsatisfied with the amount. Here, the jury returned a general verdict for Callender. When the jury returns a general verdict for one party, we presume that the jury found for the successful party on all issues raised by that party and presented to the jury.[30] So we presume that the jury's verdict for Callender indicates it agreed with his argument that the 2005 accident had not caused Golnick's physical injuries. This is particularly true when Golnick did not

---

[29] *Gustafson*, *supra* note 22.

[30] See *Heckman v. Burlington Northern Santa Fe Ry. Co.*, 286 Neb. 453, 837 N.W.2d 532 (2013).

ask the court to give the jury a special verdict form or require the jury to make special findings.[31]

### (c) Court Properly Rejected Golnick's
### Proposed Jury Instruction No. 2

At the jury instruction conference, Golnick's attorney objected to the court's instruction No. 7 on damages. He asked that the court include the additional damage components included in his proposed instruction No. 2. The court refused his request. The court's instruction No. 7 follows NJI2d Civ. 4.01, the pattern instruction for damages in cases where joint and several liability and contributory negligence are not at issue.[32]

NJI2d Civ. 4.01 informs the jury that if it returns a verdict for the plaintiff (Golnick), it must decide how much money would fairly compensate him for his damages. The pattern instruction states that the jury must consider only those things proximately caused by the defendant's (Callender's) negligence. And it lists several nonexclusive damage components that a jury may consider depending on the issues raised and the evidence.[33] The court's instruction included two of the listed damage components: (1) "[t]he nature and extent of the injury, including whether the injury is temporary or permanent (and whether any resulting disability is partial or total)," and (2) "[t]he physical and mental suffering [Golnick] has experienced (and is reasonably certain to experience in the future)." Golnick's proposed instruction No. 2 would have added several damage components to the court's list. On appeal, however, Golnick argues only that the court erred in failing to include damage components for anxiety and inconvenience.

Golnick contends that anxiety and inconvenience are specific examples of mental distress that the Legislature has recognized as noneconomic damages under Neb. Rev. Stat.

---

[31] See Neb. Rev. Stat. § 25-1121 (Reissue 2008).

[32] See NJI2d Civ. 4.01 and Special Note.

[33] See *id*., comment.

§ 25-21,185.08 (Reissue 2008). Section 25-21,185.08 lists examples of economic and noneconomic damages that a fact finder can consider in civil actions where joint and several liability is at issue. Golnick argues that because the Legislature has specifically authorized damages for anxiety and inconvenience in some cases, these damage components should be available whenever the evidence supports them. He contends that the evidence supported the instruction and that the court erred in failing to give the instruction. We conclude that the court's instruction adequately covered the issues.

[16] The comment to NJI2d Civ. 4.00 states that the meaning of the term "inconvenience" is unclear and that it is included in that instruction only because it is listed in § 25-21,185.08 as a noneconomic damage component. We note that serious inconvenience is a consideration in some nuisance cases.[34] Golnick, however, is using the term as a specific type of mental distress. And Golnick's closing argument shows that he is referring to hedonic damages for his loss of enjoyment of life resulting from his physical injuries. But in Nebraska, hedonic damages are subsumed within a plaintiff's damages for pain and suffering. They are not a separate category of damages.[35]

[17] Similarly, in many cases, a plaintiff's anxiety is inseparable from his or her general mental suffering caused by a physical injury.[36] In a couple of cases, we have addressed anxiety associated with parasitic damages for the plaintiff's "reasonable fear of a future harm attributable to a physical injury caused by the defendant's negligence."[37] But Golnick

---

[34] See, *Botsch v. Leigh Land Co.*, 195 Neb. 509, 239 N.W.2d 481 (1976); 66 C.J.S. *Nuisances* § 37 (2009).

[35] See *Anderson/Couvillon v. Nebraska Dept. of Soc. Servs.*, 248 Neb. 651, 538 N.W.2d 732 (1995).

[36] See, e.g., *Southwell v. DeBoer*, 163 Neb. 646, 80 N.W.2d 877 (1957) (citing cases).

[37] *Hartwig v. Oregon Trail Eye Clinic*, 254 Neb. 777, 784, 580 N.W.2d 86, 91 (1998). Accord *Baylor v. Tyrrell*, 177 Neb. 812, 131 N.W.2d 393 (1964), *disapproved on other grounds, Larsen v. First Bank*, 245 Neb. 950, 515 N.W.2d 804 (1994).

did not argue that he has anxiety associated with parasitic damages. And a court does not err in failing to give an instruction if the substance of the proposed instruction is contained in those instructions actually given.[38] In Golnick's closing argument, his attorney explained the things that the jury could consider in determining damages:

> The damages instruction gives you what you can consider. And those things are what you heard from the witness stand about . . . Golnick's physical pain, his anxiety, the inconvenience, the worry, the fear that he had, those things are all physical or emotional and mental experiences that resulted directly from the wreck of October 5, 2005.

We conclude that the court sufficiently informed the jury that Golnick's anxiety and inconvenience were a part of his damages for pain and suffering.

### 5. Court Did Not Abuse Its Discretion in Denying Golnick's Request for Juror Information

Golnick contends that under Neb. Rev. Stat. § 25-1635 (Reissue 2008), the court erred in denying his motion for juror contact information after the court had entered judgment for Callender. He explains that during the jurors' deliberations, they asked the court if they could use a calculator. He argues that this question suggests they were planning to determine the amount of his damages, yet a half hour later, they returned a verdict for Callender. He contends that this apparent change in the jury's direction warranted investigation.

Section 25-1635 prohibits the disclosure of juror information without a court order for good cause shown, but it gives a court discretion to disclose the names of persons drawn for actual service as a juror. Golnick argues that because the names of the jurors were announced during voir dire, obtaining their contact information after the trial did not raise privacy concerns. He argues that the public has a First Amendment right of access to juror information after a trial.

---

[38] *Karel v. Nebraska Health Sys.*, 274 Neb. 175, 738 N.W.2d 831 (2007).

It is true that the U.S. Supreme Court has held that a First Amendment right of public access applies to criminal trials, including voir dire proceedings.[39] Where this right applies, the "presumption of openness may be overcome only by an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest."[40]

Federal courts of appeals have "widely agreed" that the First Amendment right of public access "extends to civil proceedings and associated records and documents."[41] And we have held that a trial court abuses its discretion when it denies a party's request before voir dire to review juror questionnaires and withholds the nonconfidential portion of those forms.[42]

But providing the jurors' personal information to the parties before voir dire is different than disclosing it after a verdict. A court's disclosure of the information before voir dire allows parties to make intelligent inquiries and decisions about peremptory strikes of prospective jurors. For this reason, we have held in criminal cases that a court's impaneling an anonymous jury—meaning that the jurors' personal information is withheld from the public and the parties—is a drastic measure that should only be undertaken in limited circumstances.[43]

[18] These concerns are not present here. Golnick had access to the relevant part of the jurors' questionnaires for conducting voir dire, and his appeal does not raise the benefits of open trial proceedings. There is "clearly no public right

---

[39] *Press-Enterprise Co. v. Superior Court of Cal.*, 464 U.S. 501, 104 S. Ct. 819, 78 L. Ed. 2d 629 (1984).

[40] *Id.*, 464 U.S. at 510. See, also, *Press-Enterprise Co. v. Superior Court*, 478 U.S. 1, 106 S. Ct. 2735, 92 L. Ed. 2d 1 (1986).

[41] *Courthouse News Service v. Planet*, 750 F.3d 776, 786 (9th Cir. 2014) (citing cases).

[42] See *Huber, supra* note 5.

[43] See *State v. Nadeem*, 284 Neb. 513, 822 N.W.2d 372 (2012).

of access to the jurors' deliberations themselves."[44] Different considerations are at play when a party seeks to interview jurors about their deliberations after the jury has returned its verdict.

[19] "[A] special historical and essential value applies to the secrecy of jury deliberations which is not applicable to other trial and pre-trial proceedings."[45] As federal appellate courts have stated, a jury's "'[f]reedom of debate might be stifled and independence of thought checked if jurors were made to feel that their arguments and ballots were to be freely published to the world.'"[46] We conclude that because there is no constitutional right to obtain information about a jury's deliberations, a court's discretion under § 25-1635 to disclose juror information for good cause shown after a verdict should be tempered by the restrictions imposed under Neb. Evid. R. 606(2).[47]

Rule 606(2) prohibits a juror from testifying about the validity of a verdict based on the jury's deliberations or the juror's mental processes:

> Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon his or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict or indictment or concerning his mental processes in connection therewith . . . .

Rule 606(2) also prohibits a court from receiving a juror's "affidavit or evidence of any statement by him indicating an effect of this kind." Its exceptions are limited to permitting a

---

[44] *In re Globe Newspaper Co.*, 920 F.2d 88, 94 (1st Cir. 1990). Accord, *U.S. v. Cleveland*, 128 F.3d 267 (5th Cir. 1997); *U.S. v. Calbas*, 821 F.2d 887 (2d Cir. 1987).

[45] *In re Globe Newspaper Co., supra* note 44, 920 F.2d at 94.

[46] *Cleveland, supra* note 44, 128 F.3d at 270, quoting *Clark v. United States*, 289 U.S. 1, 53 S. Ct. 465, 77 L. Ed. 993 (1933).

[47] See Neb. Rev. Stat. § 27-606(2) (Reissue 2008).

juror to "testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror." We have previously looked to federal case law in applying rule 606(2) because it is adopted from Fed. R. Evid. 606(b).[48]

[20] The federal rule "is grounded in the common-law rule against admission of jury testimony to impeach a verdict and the exception for juror testimony relating to extraneous influences."[49] The common-law rule that shields jury deliberations, in turn, rested on substantial policy considerations to protect the integrity and finality of jury trials. Permitting jurors to impeach the verdict would result in defeated parties harassing jurors "'in the hope of discovering something which might invalidate the finding [and] make what was intended to be a private deliberation, the constant subject of public investigation—to the destruction of all frankness and freedom of discussion and conference.'"[50] So Nebraska's rule 606(2) promotes the public interests of protecting jurors' freedom of deliberation and the finality of judgments, absent a plausible allegation of juror misconduct.

[21,22] We have held that when an allegation of jury misconduct is made and is supported by a showing which tends to prove that serious misconduct occurred, the trial court should conduct an evidentiary hearing to determine whether the alleged misconduct actually occurred.[51] But rule 606(2) "prohibits admission of a juror's affidavit to impeach a verdict on the basis of the jury's motives, methods, misunderstanding,

---

[48] See, *Harmon Cable Communications v. Scope Cable Television*, 237 Neb. 871, 468 N.W.2d 350 (1991); R. Collin Mangrum, Mangrum on Nebraska Evidence 471 (2014).

[49] *Tanner v. United States*, 483 U.S. 107, 121, 107 S. Ct. 2739, 97 L. Ed. 2d 90 (1987).

[50] *Id.*, 483 U.S. at 119-20, quoting *McDonald v. Pless*, 238 U.S. 264, 35 S. Ct. 783, 59 L. Ed. 1300 (1915).

[51] *Nebraska Nutrients v. Shepherd*, 261 Neb. 723, 626 N.W.2d 472 (2001) (abrogated in part on other grounds as stated in *Sutton v. Killham*, 285 Neb. 1, 825 N.W.2d 188 (2013)).

thought processes, or discussions during deliberations, which enter into the verdict."[52]

[23] Under these principles, federal courts routinely hold that absent a reasonable ground for investigating, a party cannot use posttrial interviews with jurors as a "fishing expedition" to find some reason to attack a verdict.[53] We agree with this reasoning and conclude that it is applicable to a court's exercise of discretion under § 25-1635.

Here, Golnick did not allege juror misconduct or the presence of an external influence on the jury. Instead, he explicitly states that he wished to question the jurors about their deliberations to determine whether they were improperly influenced. His request to investigate rests solely on the jury's request to use a calculator, from which question he surmises that the jurors were planning to award him damages but changed their minds. The jury's request, however, was not a reasonable ground for suspecting misconduct or juror corruption. So Golnick essentially requested a "fishing expedition" to inquire into the jurors' reasoning and mental processes to find some reason to impeach the verdict. Because rule 606(2) prohibits this type of evidence, the court did not err in denying his request.

## VI. CONCLUSION

We conclude that the court did not abuse its discretion in granting Callender leave to amend his answer to admit that he negligently caused the parties' vehicle accident. Under these circumstances, the court also did not abuse its discretion in denying Golnick's request to amend his complaint to allege that Callender's negligent driving occurred because he was distracted by his cell phone. The cell phone evidence was unnecessary to prove that Callender was negligent, because he admitted his negligence. And the court's orders did not

---

[52] *Kopecky v. National Farms, Inc.*, 244 Neb. 846, 863, 510 N.W.2d 41, 53 (1994).

[53] See, 3 Jack B. Weinstein & Margaret A. Berger, Weinstein's Federal Evidence § 606.06[2][a] (Joseph M. McLaughlin ed., 2d ed. 2014) (citing federal cases); 27 Charles Alan Wright & Victor James Gold, Federal Practice and Procedure § 6076 (2d ed. 2007).

preclude Golnick from presenting evidence relevant to how Callender's negligence caused Golnick's injuries.

We further conclude that the court's jury instructions either were correct or did not prejudice Golnick. Finally, we conclude that the court did not abuse its discretion in denying Golnick's request for juror contact information after the jurors completed their service. Because rule 606(2) prohibits evidence of the jurors' deliberations, the court did not err in denying Golnick's request to investigate the jurors' reasoning and thought processes.

AFFIRMED.

––––––––––––

DAVID FIALA, LTD., A NEBRASKA CORPORATION, DOING BUSINESS AS FUTURESONE, APPELLEE, V. IAN HARRISON ET AL., APPELLEES, AND WILLIAM GROSS, APPELLANT.

___ N.W.2d ___

Filed March 20, 2015.    No. S-14-178.

1. **Arbitration and Award.** Arbitrability presents a question of law.
2. **Contracts.** The meaning of a contract and whether a contract is ambiguous are questions of law.
3. **Judgments: Appeal and Error.** When reviewing questions of law, an appellate court has an obligation to resolve the questions independently of the conclusion reached by the trial court.
4. **Arbitration and Award: Federal Acts: Contracts.** If a contract containing an arbitration clause involves interstate commerce, the Federal Arbitration Act governs the contract.
5. **Contracts: States.** Contracts involving interstate commerce include contracts for services between parties of different states.
6. **Contracts.** In interpreting a contract, a court must first determine, as a matter of law, whether the contract is ambiguous.
7. **Contracts: Words and Phrases.** A contract is ambiguous when a word, phrase, or provision in the contract has, or is susceptible of, at least two reasonable but conflicting interpretations or meanings.
8. **Contracts.** When a court has determined that ambiguity exists in a document, an interpretative meaning for the ambiguous word, phrase, or provision in the document is a question of fact for the fact finder.
9. **Contracts: Evidence.** If a contract is ambiguous, the meaning of the contract is a question of fact and a court may consider extrinsic evidence to determine the meaning of the contract.